Donald WELCH, Anthony Duk, Aaron Bitzer, Plaintiffs,

v.

Edmund G. BROWN, Jr., Governor of the State of California, In His Official Capacity, Anna M. Caballero, Secretary of California State and Consumer Services Agency, In Her Official Capacity, Denise Brown, Director of Consumer Affairs, In Her Official Capacity, Christine Wietlisbach, Patricia Lock–Dawson, Samara Ashley, Harry Douglas, Julia Johnson, Sarita Kohli, Renee Lonner, Karen Pines, Christina Wong, In Their Official Capacities as Members of the California Board of Behavioral Sciences, Sharon Levine, Michael Bishop, Silvia Diego, Dev Gnanadev, Reginald Low, Denise Pines, Janet Salomonson, Gerrie Schipske, David Serrano Sewell, Barbara Yaroslaysky, In Their Official Capacities as Members of the Medical Board of California, Defendants.

Civ. No. 2:12–2484 WBS KJN.

United States District Court, E.D. California.

Signed Nov. 4, 2014.

Filed Nov. 5, 2014.

Kevin Trent Snider, Matthew Brown McReynolds, Pacific Justice Institute, Sacramento, CA, Michael John Peffer, Pacific Justice Institute, Santa Ana, CA, for Plaintiffs.

Alexandra Robert Gordon, Paul Evan Stein, California Attorney General's Office, San Francisco, CA, for Defendants.

## MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY INJUNCTION

WILLIAM B. SHUBB, District Judge.

Plaintiffs Donald Welch, Anthony Duk, and Aaron Bitzer seek to enjoin enforcement of Senate Bill 1172 ("SB 1172"), which prohibits mental health providers in California from engaging in sexual orientation change efforts ("SOCE") with minors. The court previously granted plaintiffs' motion for a preliminary injunction after finding they could likely show that SB 1172 violated their rights to free speech under the First Amendment. Characterizing SB 1172 as a regulation of therapeutic treatment, not expressive speech, the Ninth Circuit held that SB 1172 did not violate free speech rights and thus reversed the court's order granting plaintiffs' motion for a preliminary injunction. *See Pickup v. Brown*, 740 F.3d 1208, 1229–32, 1236 (9th Cir.2014). The Ninth Circuit also held that SB 1172 is not unconstitutionally vague or overbroad and does not violate First Amendment expressive association rights or the fundamental rights of parents seeking SOCE for their minor children. *Id.* at 1232–36.

Because the court's previous order concluded that plaintiffs were likely to prevail on their 42 U.S.C. § 1983 claim asserting that SB 1172 violated their rights to free speech, the court did not address the alleged constitutional violations underlying plaintiffs' remaining § 1983 claims. After providing the parties with the opportunity for supplemental briefing, the court now addresses plaintiffs' motion for a preliminary injunction on the grounds that SB 1172 violates the Free Exercise and Establishment Clauses and privacy rights. Based on the Ninth Circuit's decision on appeal, the court need not address plaintiffs' § 1983 claims alleging that SB 1172 is unconstitutionally vague or overbroad and violates First Amendment expressive association rights and the fundamental rights of parents seeking SOCE for their minor children. *See id.* (rejecting such claims).

## I. *SB 1172 and Plaintiffs*

SB 1172 went into effect on January 1, 2013 and was codified in sections 865, 865.1, and 865.2 of the California Business and Professions Code.[1] Section 865.1 states, "Under no circumstances shall a mental health provider engage in sexual orientation change efforts with a patient under 18 years of age." Cal. Bus. & Prof. Code § 865.1. Section 865.2 provides that any SOCE "attempted on a patient under 18 years of age by a mental health provider shall be considered unprofessional conduct and shall subject a mental health provider to discipline by the licensing entity for that mental health provider." *Id.* § 865.2.

Subsection 865(b)(1) defines "sexual orientation change efforts" as "any practices by mental health providers that seek to change an individual's sexual orientation," including "efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex." *Id.* § 865(b)(1). Excluded from classification as SOCE are "psychotherapies that: (A) provide acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and identity exploration and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices; and (B) do not seek to change sexual orientation." *Id.* § 865(b)(2).

Plaintiff Donald Welch is a licensed marriage and family therapist in California and an ordained minister. (Welch Decl. ¶ 1 (Docket No. 11).) He is currently the president of a non-profit professional counseling center, the owner and director of a for-profit counseling center, and an adjunct professor at two universities. (*Id.* ¶ 4.) Welch is also employed part-time as a Counseling Pastor for Skyline Wesleyan Church, which teaches that "human sexuality ... is to be expressed only in a monogamous lifelong relationship between one man and one woman within the framework of marriage." (*Id.* ¶ 5, Ex. A at 3.) Welch provides treatment that qualifies as SOCE under SB 1172, and his "compliance with SB 1172 will jeopardize [his] employment" at Skyline Wesleyan Church. (*Id.* ¶¶ 5, 8–9, 11, 17.)

Plaintiff Anthony Duk is a medical doctor and board certified psychiatrist in private practice who works with adults and children over the age of sixteen. (Duk Decl. ¶ 1 (Docket No. 13).) His current patients include minors "struggling with" homosexuality and bisexuality and he utilizes SOCE. (*Id.* ¶ 6.) Plaintiff Aaron Bitzer is an adult who was "involved in"

---

**1.** Although SB 1172 is now codified under the aforementioned code sections, the court will continue to refer to "SB 1172" when discussing the three sections collectively.

SOCE as an adult and had plans to become a therapist and practice SOCE. (Bitzer Decl. ¶¶ 1–11, 15 (Docket No. 12).)

II. *Analysis*

■ To succeed on a motion for a preliminary injunction, plaintiffs must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *Perfect 10, Inc. v. Google, Inc.,* 653 F.3d 976, 979 (9th Cir.2011). The Supreme Court has repeatedly emphasized that "injunctive relief [i]s an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter,* 555 U.S. at 22, 129 S.Ct. 365.

■ "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). " 'A preliminary injunction ... is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment.' " *U.S. Philips Corp. v. KBC Bank N.V.,* 590 F.3d 1091, 1094 (9th Cir.2010) (quoting *Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir.1984)) (omission in original).

A. *Section 1983 Claims for Violations of the Religion Clauses*

1. *Application of SB 1172 to Welch*

SB 1172 prohibits the use of SOCE with minors only when performed by a "mental health provider," which is limited to:

a physician and surgeon specializing in the practice of psychiatry, a psycholo-gist, a psychological assistant, intern, or trainee, a licensed marriage and family therapist, a registered marriage and family therapist, intern, or trainee, a licensed educational psychologist, a credentialed school psychologist, a licensed clinical social worker, an associate clinical social worker, a licensed professional clinical counselor, a registered clinical counselor, intern, or trainee, or any other person designated as a mental health professional under California law or regulation.

Cal. Bus. & Prof.Code § 865(a). Based on this definition, the parties agree that SB 1172 does not affect a religious leader's ability to provide SOCE through his or her church so long as that religious leader is not a "mental health provider" under the statute.

The parties dispute, however, whether SB 1172 extends to a religious leader providing SOCE through his or her church when, like Welch, the religious leader is also a "mental health provider" under the statute. Defendants contend that SB 1172 would not restrict Welch from providing SOCE in his capacity as a Counseling Pastor, so long as he does not "hold himself out" as a licensed marriage and family therapist when providing therapeutic treatment as a Counseling Pastor. (Defs.' Opp'n at 14:25–27 (Docket No. 33); *cf.* Amicus Curiae Opp'n at 9:7–10 (Docket No. 39) ("When he is practicing marriage and family therapy as a state-licensed therapist, whatever the setting, [ ] he is subject to the same regulations as every other licensed marriage and family therapist, and must comply with SB 1172.").)

Defendants rely on several statutory exemptions for the proposition that SB 1172 would not restrict Welch from offering SOCE when working as a Counseling Pastor. Most relevant to Welch is the Li-

censed Marriage and Family Therapist Act ("LMFT Act"), which governs the licensing and regulation of marriage and family therapists. Cal. Bus. & Prof.Code §§ 4980–4980.90; *see also* Cal. Bus. & Prof.Code § 4980.04 (providing the short title). The LMFT Act prohibits the unlicensed practice of marriage and family therapy as defined in the LMFT Act.[2] *Id.* § 4980(b). The LMFT Act provides that "[a] person engages in the practice of marriage and family therapy when he or she performs or offers to perform or *holds himself or herself out* as able to perform this service for remuneration in any form, including donations." *Id.* § 4980.10 (emphasis added). Section 4980.01, however, exempts application of the LMFT Act to "any priest, rabbi, or minister of the gospel of any religious denomination when performing counseling services as part of his or her pastoral or professional duties." *Id.* § 4980.01; *see also Nally v. Grace Cmty. Church*, 47 Cal.3d 278, 298, 253 Cal.Rptr. 97, 763 P.2d 948 (1988) ("[T]he Legislature has exempted the clergy from the licensing requirements applicable to marriage, family, child and domestic counselors....").

Although section 4980.01 exempts religious leaders from having to obtain a license to provide marriage and family counseling through their church, it does not resolve the application of SB 1172 to Welch. Welch already has a license under the LMFT Act and presumably wants to

"hold himself out" as a licensed marriage and family therapist when providing therapy as a Counseling Pastor for his church. Section 4980.01 exempts Welch from having to obtain a license to provide therapy through his church, but does not appear to exempt him from regulation of his conduct while performing therapy pursuant to his license. Albeit in dicta, the Ninth Circuit seemed to recognize that SB 1172 would govern Welch's conduct when it emphasized that SB 1172 does not:

- Prevent mental health providers from referring minors to *unlicensed counselors, such as religious* leaders
- Prevent *unlicensed providers, such as religious leaders,* from administering SOCE to children and adults.

*Pickup,* 740 F.3d at 1223 (emphasis added). Accordingly, it is likely Welch will be able to show that SB 1172 will subject him to the possibility of discipline if, as a licensed marriage and family therapist, he utilizes SOCE while working as a Counseling Pastor for his church. Welch can therefore pursue his § 1983 claims asserting that SB 1172 violates his rights under the Free Exercise and Establishment Clauses.

### 2. *Free Exercise Clause*

■ "The Free Exercise Clause, applicable to the states through the Fourteenth Amendment, provides that 'Congress shall make no law ... prohibiting the free exer-

---

**2.** Section 4980.02 of the LMFT Act defines "the practice of marriage and family therapy" as:

[The] service performed with individuals, couples, or groups wherein interpersonal relationships are examined for the purpose of achieving more adequate, satisfying, and productive marriage and family adjustments. This practice includes relationship and premarriage counseling. The application of marriage and family therapy principles and methods includes, but is not limit-

ed to, the use of applied psychotherapeutic techniques, to enable individuals to mature and grow within marriage and the family, the provision of explanations and interpretations of the psychosexual and psychosocial aspects of relationships, and the use, application, and integration of the coursework and training required by Sections 4980.36, 4980.37, and 4980.41, as applicable.

*Id.* § 4980.02.

cise [of religion].'" *Stormans, Inc. v. Se-lecky,* 586 F.3d 1109, 1127 (9th Cir.2009) (quoting U.S. Const., amend. I) (omission and alteration in original). "Under the Free Exercise Clause of the First Amendment, the government may not, among other things, 'impose special disabilities on the basis of religious views or religious status.'" *Alpha Delta Chi–Delta Chapter v. Reed,* 648 F.3d 790, 804 (9th Cir.2011) (quoting *Emp't Div., Dep't of Human Res. of Or. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)).

■ "The right to freely exercise one's religion, however, 'does not relieve an individual of the obligation to comply with a "valid and neutral law of general applicability on the ground that the law pro-scribes (or prescribes) conduct that his religion prescribes (or proscribes)."'" *Stormans,* 586 F.3d at 1127 (quoting *Smith,* 494 U.S. at 879, 110 S.Ct. 1595). The Supreme Court has thus held that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (citing *Smith,* 494 U.S. 872, 110 S.Ct. 1595).

In *Stormans,* the Ninth Circuit examined the Supreme Court's free exercise jurisprudence and traced the development of the Court's decision to apply only rational basis review to laws that are neutral and of general applicability. *See Stormans,* 586 F.3d at 1128–1130. The Ninth Circuit explained, "Underlying the Supreme Court's jurisprudence is the principle that the Free Exercise Clause 'embraces two concepts[ ]—freedom to believe and freedom to act.' The first is absolute but, in the nature of things, the second cannot be." *Id.* at 1128 (alteration in origi-

nal). "This principle traces its roots to the idea that allowing individual exceptions based on religious beliefs from laws governing general practices 'would … make the professed doctrines of religious belief superior to the law of the land, and in effect [ ] permit every citizen to become a law unto himself.'" *Id.* (quoting *Reynolds v. United States,* 98 U.S. 145, 167, 25 L.Ed. 244 (1878) (alteration in original)).

### a. *Neutrality*

■ "[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Lukumi,* 508 U.S. at 533, 113 S.Ct. 2217. In determining whether a law is neutral, the court must examine the text of the statute and its operation. *Stormans,* 586 F.3d at 1130. "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Lukumi,* 508 U.S. at 533, 113 S.Ct. 2217. Here, the parties do not dispute that SB 1172 is facially neutral. (Pls.' Mem. at 10:14.) Nonetheless, "[a]part from the text, the effect of a law in its real operation is strong evidence of its object," *Lukumi,* 508 U.S. at 535, 113 S.Ct. 2217, and laws may lack neutrality if they "suppress, target, or single out the practice of any religion because of religious content." *Stormans,* 586 F.3d at 1131.

Plaintiffs contend that SB 1172 lacks neutrality based primarily on two comments in the legislative history of the bill. As a threshold matter, whether a court can consider legislative history in free exercise challenges is an "unsettled" area of law. *Id.* at 1131–32. Although the Supreme Court in *Lukumi* examined legislative history to illustrate that the prohibition on animal sacrifice was aimed at the Santeria religion, only one justice joined in that part of decision, and two justices expressly disagreed with the consideration of legisla-

tive history. *See id.* at 1132 (discussing the votes of the justices); *cf. United States v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (stating that, in the context of a First Amendment free speech claim, the "Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive").

Assuming consideration of legislative history is proper in free exercises cases, the statements in the bill analyses of SB 1172 are easily distinguishable from the blatant animosity expressed toward the Santeria religion during the passage of the ordinances in *Lukumi.* For example, at the city council meeting held just weeks after the Santeria Church announced its plans to open, one councilman said that the "Santeria devotees at the Church 'are in violation of everything this country stands for.'" *Lukumi,* 508 U.S. at 541, 113 S.Ct. 2217. The chaplain of the local police department "told the city council that Santeria was a sin, 'foolishness,' 'an abomination to the Lord,' and the worship of 'demons.'" *Id.* The city attorney described the practices of the Santeria religion as "abhorrent" and the public crowd at the meeting "interrupted statements by council members critical of Santeria with cheers." *Id.* at 541–42, 113 S.Ct. 2217.

Here, plaintiffs first rely on the statement in the Senate Rules Committee Analysis indicating that the World Health Organization ("WHO") notes that sexual orientation "by itself is not to be regarded as a disorder? [sic] it is often a result of unfavorable and intolerant attitudes of the society or a conflict between sexual urges and religious belief systems.'" Senate Rules Committee, Committee Analysis of SB 1172, at 6 (Aug. 28, 2012). This statement appears in a section of the analysis that traces the changing views of sexual orientation by the American Psychiatric

Association and the WHO. The quoted statement from the WHO raises both secular and religious influences as factors contributing to reasons individuals may seek SOCE. It does not suggest that the California Legislature was targeting religious beliefs or religious motivations underlying SOCE when enacting SB 1172.

The second statement plaintiffs rely on appears in the section of the same bill analysis that describes the practice of SOCE. The section explains how the APA defines the treatment, how a founder of modern reparative theory defines it, and then states, "Others, particularly conservative Christian transformational ministries, use the term conversion therapy to refer to the utilization of prayer, religious conversion, [and] individual and group counseling to change a person's sexual orientation." *Id.* at 7. Discussing how various groups, including religious groups, define SOCE does not demonstrate that the Legislature was targeting SOCE performed by religious groups, especially when SB 1172 does not prohibit SOCE performed within a church setting so long as it is not performed by a mental health provider.

The legislative analyses leading to SB 1172 illustrate that the Legislature was concerned with the harm SOCE therapy causes minors regardless of whether it is motivated by secular or religious beliefs. Nothing in the legislative history gives rise to the inference that, in enacting the bill, the Legislature sought to suppress, target, or single out the practice of any religion. Unlike in *Lukumi,* where the city enacted the ordinances "because of, not merely in spite of their suppression of Santeria religious practice," *Lukumi,* 508 U.S. at 540, 113 S.Ct. 2217, the legislative history reveals that the California Legislature enacted SB 1172 despite religious views, not because of them.

Lastly, the fact that Welch may be restricted from performing SOCE as a Counseling Pastor does not defeat the neutrality of SB 1172. In *Stormans*, the state of Washington passed regulations that, with limited exceptions, required pharmacists and pharmacies to deliver all lawfully prescribed medications, including Plan B, an emergency contraceptive. Similar to the limitation Welch may face, the Ninth Circuit in *Stormans* concluded, "That the rules may affect pharmacists who object to Plan B for religious reasons does not undermine the neutrality of the rules." *Stormans*, 586 F.3d at 1131.

Plaintiffs point out that on remand and after a more complete record developed at trial, the district court in *Stormans* ultimately concluded that Washington's regulations requiring stocking and disbursing of all medications, including Plan B, was subject to strict scrutiny and violated the Free Exercise Clause. *See Stormans Inc. v. Selecky*, 844 F.Supp.2d 1172, 1199 (W.D.Wash.2012). Pivotal to its finding that the regulations "target religious conduct" and therefore lacked neutrality, however, was the fact that the regulations "exempt pharmacies and pharmacists from stocking and delivering lawfully prescribed drugs for an almost unlimited variety of secular reasons, but fail to provide exemptions for reasons of conscience." *Id.* at 1189. The district court also found that the "Board of Pharmacy has interpreted the stocking and delivery rules in a way that favors secular conduct over religiously-motivated conduct." *Id.* at 1192. In

this respect, the comparison of the district court's decision in *Stormans* and this case is inapposite because SB 1172 does not contain a single secular exception but provides an unqualified exemption for unlicensed religious leaders.

When faced with a similar state statute prohibiting SOCE with minors, the Third Circuit recently held that the statute was neutral. *King v. Governor of the State of New Jersey*, 767 F.3d 216, 242–43 (3d Cir. 2014). Plaintiffs seek to distinguish *King* on the ground that the New Jersey law "prohibit[ed] all attempts to change sexual orientation, regardless of whether such efforts were intended to influence a client toward heterosexuality or homosexuality." (Pls.' Ltr. Br. at 2 (Docket No. 86).) Even assuming plaintiffs are correct that SB 1172 is limited to or aimed at SOCE efforts affecting only homosexuality,[3] the distinction is irrelevant. As the Ninth Circuit has explained, "The Free Exercise Clause is not violated even though a group motivated by religious reasons may be more likely to engage in the proscribed conduct." *Stormans*, 586 F.3d at 1131.

Similar to other neutral laws that have an effect on religious conduct, the evidence before the court indicates that SB 1172 "'punishe[s] conduct for the harm it causes, not because the conduct is religiously motivated.'" *Id.* (quoting *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir.1995)). It is therefore unlikely that plaintiffs could establish that SB 1172 lacks neutrality.[4]

---

**3.** The definition of SOCE in section 865 is not limited homosexuality, but merely indicates that the definition "includes efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex." Cal. Bus. & Prof.Code § 865(b)(1). Plaintiffs nonetheless contend that "the Ninth Circuit's interpretation of SB 1172 focused

exclusively on efforts to reduce same-sex attraction." (Pls.' Ltr. Br. at 2.)

**4.** Plaintiffs' reliance on *Burwell v. Hobby Lobby Stores, Inc.*, —— U.S. ——, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014) is misplaced. *Hobby Lobby Stores, Inc.*, involved a claim under the Religious Freedom and Restoration Act ("RFRA"), which provides "very broad protection for religious liberty" and rejects the

1088

### b. *General Applicability*

■ "A law is not generally applicable when the government, 'in a selective manner[,] impose[s] burdens only on conduct motivated by religious belief.'" *Id.* at 1134 (quoting *Lukumi*, 508 U.S. at 543, 113 S.Ct. 2217). "The 'selective manner' analysis tests the rules for substantial underinclusiveness." *Id.* Here, SB 1172 does not impose burdens on religiously-motivated conduct, but categorically prohibits SOCE performed by a "mental health provider" regardless of the motivation for providing SOCE. As in *Stormans*, there is no evidence that the California Legislature sought to eliminate the use of SOCE with minor patients only when motivated by religious beliefs. *See id.*

In fact, the only way SB 1172 could be viewed as under-inclusive is in its exclusion of SOCE performed by an individual who is not a "mental health provider," such as an unlicensed religious leader. This accommodation for religion cuts against a finding that SB 1172 selectively imposes a burden on conduct motivated by religious belief. *See id.* at 1137 ("[T]he rules do not selectively impose an undue obligation on conduct motivated by religious belief because the rules actually provide for religious accommodation."). In light of the exemption allowing unlicensed religious leaders to provide SOCE and the lack of any evidence suggesting that SB 1172 is under-inclusive, it is unlikely that plaintiffs could show that SB 1172 is not generally applicable.

Because it is likely that SB 1172 is a neutral law of general applicability, plaintiffs' claim based on a violation of the Free Exercise Clause would likely be examined under only rationale basis scrutiny.[5] *Accord King*, 767 F.3d at 243.

### 3. *Establishment Clause*

The Establishment Clause of the First Amendment, applied against the states by incorporation into the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), provides, "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. "This clause applies not only to official condonement of a particular religion or religious belief, but also to official disapproval or hostility towards religion." *Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1120–21 (9th Cir.2002).

■ "A statute or regulation will survive an Establishment Clause attack if (1) it has a secular legislative purpose, (2) its primary effect neither advances nor inhibits religion, and (3) it does not foster excessive government entanglement with religion." *Williams v. California*, 764 F.3d 1002, 1014 (9th Cir.2014) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)). "Although the *Lemon* test is perhaps most frequently used in cases involving govern-

Supreme Court's holding in *Smith* that a neutral law of general applicability is subject only to rational basis review. *See Hobby Lobby Stores, Inc.*, 134 S.Ct. at 2760–61. Plaintiffs have not brought a claim under RFRA.

**5.** For the first time in their supplemental letter brief, plaintiffs mention the possibility of seeking strict scrutiny under a hybrid rights theory. *See Smith*, 494 U.S. at 882, 110 S.Ct. 1595; *see generally Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir.1999) ("*Smith*, however, excepts a hybrid-rights claim from its rational

basis test. In *Smith*, the Court distinguished the strict scrutiny imposed in 'hybrid situation[s]' in which a law 'involve[s] not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections.'"). Notwithstanding the fact that plaintiffs failed to purse such a theory in their motion for a preliminary injunction, plaintiffs do not explain how they could rely on any free speech rights after the Ninth Circuit's decision on appeal.

ment allegedly giving *preference* to a religion, the *Lemon* test accommodates the analysis of a claim brought under a hostility to religion theory as well." *Am. Family Ass'n, Inc.*, 277 F.3d at 1121. Here, plaintiffs rely exclusively on the third prong of the *Lemon* test, arguing that SB 1172 results in excessive government entanglement with religion.

"In determining whether there is an excessive entanglement with religion, [the court] must analyze 'the character and purpose of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationships between the government and the religious activity.'" *Williams*, 764 F.3d at 1015 (quoting *Lemon*, 403 U.S. at 615, 91 S.Ct. 2105). Here, only the third inquiry is relevant to plaintiffs' claim based on hostility toward religion. "A relationship results in an excessive entanglement with religion if it requires 'sustained and detailed' interaction between church and State 'for enforcement of statutory or administrative standards.'" *Id.* (quoting *Lemon*, 403 U.S. at 621, 91 S.Ct. 2105).

In contending that SB 1172 results in excessive entanglement in violation of the Establishment Clause, plaintiffs first rely on cases rejecting clergy malpractice claims. "[I]t is well settled that civil tort claims against clerics that require the courts to review and interpret church law, policies, or practices in the determination of the claims are barred by the First Amendment under the entanglement doctrine." *Franco v. The Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 204 (Utah 2001) (citing *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709–10, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976)). In *Franco*, plaintiffs sought to bring a state law malpractice claim based on a church bishop's ecclesiastical counseling and advice to "forgive, forget, and seek

Atonement" in response to the minor plaintiff's claim of sexual abuse. *Id.* at 200–01. The Utah Supreme Court held that the Establishment Clause prohibited the claim because adjudication of it would "necessarily entangle the courts in the examination of religious doctrine, practice, or church polity." *Id.* at 204.

Plaintiffs also rely on the Tenth Circuit's decision in *Colorado Christian University v. Weaver*, 534 F.3d 1245 (10th Cir.2008). In *Weaver*, Colorado provided scholarships to eligible students who attended any accredited public or private college in Colorado unless the state determined that the college was "pervasively sectarian." *Weaver*, 534 F.3d at 1250. The Tenth Circuit held that the program violated the Establishment Clause because "it expressly discriminates *among* religions, allowing aid to 'sectarian' but not 'pervasively sectarian' institutions, and it does so on the basis of criteria that entail intrusive governmental judgments regarding matters of religious belief and practice." *Id.* at 1256. The court explained, "'[T]he inquiry into the recipient's religious views required by a focus on whether a school is pervasively sectarian is not only unnecessary but also offensive. It is well established, in numerous other contexts, that courts should refrain from trolling through a person's or institution's religious beliefs.'" *Id.* at 1261 (quoting *Mitchell v. Helms*, 530 U.S. 793, 828, 120 S.Ct. 2530, 147 L.Ed.2d 660 (2000)).

Unlike clergy malpractice claims or the scholarship program in *Weaver*, SB 1172 neither contemplates nor requires an examination of religious views or doctrine. Without consideration of the motive or justification for providing SOCE, SB 1172 categorically prohibits a mental health provider from providing that type of therapeutic treatment to a minor. In enforcing SB 1172, the state need not evaluate or

even understand the teachings, doctrines, or beliefs of a church about homosexuality or one's ability to change his or her sexual orientation. The inquiry into whether a mental health provider performed SOCE will be the same regardless of whether the provider utilized the treatment while working for a church. SB 1172 will thus not require the state to engage in "intrusive judgments regarding contested questions of religious belief or practice." *Id.*

The case at hand is also distinguishable from *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). In that case, the Supreme Court found that the National Labor Relations Board's exercise of jurisdiction over teachers of parochial schools presented a "significant risk" that the Establishment Clause would be infringed. *N.L.R.B.*, 440 U.S. at 502, 99 S.Ct. 1313. The Court explained that, in response to teachers' charges of unfair labor practices, the schools claimed that "their challenged actions were mandated by their religious creeds." *Id.* The Court was concerned that resolution of such religious defenses would result in excessive entanglement because it would "necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission." *Id.*

Here, however, even if a mental health provider's use of SOCE relies on church doctrines or teachings, the state need not evaluate or consider those religious teachings in order to determine whether the provider performed SOCE. A mental health provider cannot defend against a disciplinary action under SB 1172 on the ground that the SOCE was utilized because of the provider's or patient's religious beliefs.

It is also unlikely that SB 1172 will require continued state oversight of a church, its teachings, or counseling, which weighs against a finding of excessive entanglement. *Cf. N.L.R.B. v. Hanna Boys Ctr.*, 940 F.2d 1295, 1304 (9th Cir.1991) (finding the lack of an Establishment Clause violation when, inter alia, the government would not be involved "in continuing or systematic monitoring of the Church's activities and should not involve monitoring the religious aspects of [the institutions] activities at all[, and government] involvement will not create the reality or the appearance of the government's supervising or collaborating with the Church").

Lastly, plaintiffs attempt to raise the relevance of religious doctrine by arguing that Welch offers "some degree of conversion therapy but [plaintiffs] do not believe that [he] 'seek[s] to change' clients as prohibited by the statute." (Pls.' Ltr. Br. at 4.) In the prior appeal, the Ninth Circuit held that SOCE is a type of "therapeutic treatment" and that the text of the statute "is clear to a reasonable person." *Pickup*, 740 F.3d at 1229, 1234. The Ninth Circuit found it "hard to understand how therapists who identify themselves as SOCE practitioners can credibly argue that they do not understand what practices qualify as SOCE." *Id.* Under the Ninth Circuit's reasoning, this line of argument is disingenuous.

Accordingly, it is unlikely plaintiffs will be able to show that SB 1172 impermissibly entangles the state with religion and thus it will likely be subject only to rational basis review.

### 4. *Rational Basis Review*

 Because it appears likely that SB 1172 does not run afoul of the Religion Clauses, it will likely be subject only to rational basis review. *Stormans*, 586 F.3d at 1137. "Under rational basis review, the rules will be upheld if they are rationally

related to a legitimate governmental purpose." *Id.* "To invalidate a law reviewed under this standard, '[t]he burden is on the one attacking the legislative arrangement to negative [sic] every conceivable basis which might support it.'" *Id.* (quoting *Heller v. Doe by Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)) (alteration in original). Plaintiffs have not proffered any argument as to why SB 1172 could not survive rational basis review and, more importantly, the Ninth Circuit held on appeal that "SB 1172 is rationally related to the legitimate government interest of protecting the well-being of minors." *Pickup,* 740 F.3d at 1232.

### B. *Section 1983 Claims for Violations of Privacy Rights*

#### 1. *Third–Party Standing*

Plaintiffs' § 1983 claim for violations of privacy rights relies primarily, if not exclusively, on parents' and minors' privacy rights. (*See* Compl. ¶¶ 65–76.) In its previous order, the court found that plaintiffs may not assert the third-party rights of parents of minor children or minors who want to pursue SOCE. The court reasoned that plaintiffs could not "credibly suggest that parents of minor children who seek SOCE and minors who desire SOCE face a hindrance in asserting their own rights" because those very individuals challenged the constitutionality of SB 1172 in a case filed three days after plaintiffs initiated this action. (Dec. 3, 2012 Order, 907 F.Supp.2d 1102, 1108); *accord King,* 767 F.3d at 244 ("[T]he fact that minor clients have previously filed suit [challenging a state law banning SOCE with minors] bolsters our conclusion that they are not sufficiently hindered in their ability to protect their own interests.").

Plaintiffs now suggest that the court should reconsider its prior decision in light of the negative publicity surrounding this case. That negative publicity—which was more often aimed at this court, not individuals seeking SOCE—did not deter the parent and minor plaintiffs in *Pickup* from pursuing their rights on appeal. While "a fear of social stigma can in some circumstances constitute a substantial obstacle to filing suit," an assertion that a client does not want "others to even know they are in therapy" is insufficient to merit third—party standing. *King,* 767 F.3d at 244. Having determined that plaintiffs lack prudential standing to assert the rights of parents and minors, plaintiffs are unlikely to prevail on any privacy claims based on those rights.

#### 2. *Evidentiary Privileges*

Plaintiffs further allege that SB 1172 lacks "safeguards to protect such basic concepts of privacy as the psychotherapist-patient privilege or even the clergy-penitent privilege." (Compl. ¶ 71.) "Under California Evidence Code § 1014 a psychotherapeutic patient has the privilege to refuse to disclose and to prevent others from disclosing confidential communications between the patient and doctor." *Caesar v. Mountanos,* 542 F.2d 1064, 1066 (9th Cir.1976); *see also* Cal. Evid.Code § 1016. The Ninth Circuit has recognized that exceptions to the testimonial privilege must comport with a patient's "conditional right of privacy in the doctor-patient relationship" and that the litigation exception in section 1016 is "properly justified." *Caesar,* 542 F.2d at 1067–68. Plaintiffs' reliance on such testimonial privileges attempts to import constitutional significance to state evidentiary privileges. More importantly, nothing in SB 1172 or its legislative history purports to alter California's existing psychotherapist-patient privilege.[6]

---

**6.** Because SB 1172 is limited to "mental

health providers" as defined in the statute, it

**1092**

It therefore appears unlikely that plaintiffs could prevail on any claim based on the psychotherapist-patient, penitent, or clergy privileges.

### C. *Conclusion*

Plaintiffs have not shown they are likely to succeed on the merits of their § 1983 claims based on violations of the Free Exercise and Establishment Clauses or any privacy rights. Absent such a showing, plaintiffs are not entitled to a preliminary injunction and the court need not address irreparable harm, the balance of equities, or the public interest. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,* 729 F.3d 937, 953 (9th Cir.2013). Accordingly, because plaintiffs are not likely to prevail on any of their claims that remained after the Ninth Circuit's decision in *Pickup,* the court must deny plaintiffs' motion for a preliminary injunction.

IT IS THEREFORE ORDERED that plaintiffs' motion for a preliminary injunction as it remains after the appeal in this matter be, and the same hereby is, DENIED.

does not appear to extend to a "member of the clergy" as contemplated by penitent or clergy privileges in California Evidence Code sections 1033 and 1034. Cal. Evid.Code §§ 1033 (penitent privilege), 1034 (clergy privilege); *see also id.* § 1030 (defining "member of the clergy" as a "priest, minister, religious practitioner, or similar functionary of a church or of a religious denomination or religious organization"). Even if a licensed family therapist providing therapy for the church, such as Welch, comes within the definition of "clergy" for purposes of the penitent and clergy privileges, SB 1172 again does not appear to alter the privileges.