WATFORD, Circuit Judge,
concurring in the judgment:
We don’t. have to craft new rules of copyright law to resolve this appeal. We just have to follow the law we established a few years ago, without controversy, on the subject of irreparable harm. The majority’s decision to do more is a mistake in my view, and not just because much of what the majority says about copyright law may be wrong. See Dissent at 749-51. We are usually well advised to decide no more than we need to, even when resolving routine appeals typical of those we’re likely to see in the future. We should be all the more cautious when resolving an appeal like this one, a case that could not be more atypical as far as copyright infringement *748 actions go and one that is highly charged on both sides to boot. Because the risk of making bad law in these circumstances is particularly high, we should aim to decide as narrowly as we can, leaving the task of crafting broad new rules for a case in which it is actually necessary to do so. See Frederick Schauer, Do Cases Make Bad Law?, 73 U. Chi. L.Rev. 883, 916 (2006).
Had we chosen to decide narrowly here, we could have affirmed the district court’s denial of a preliminary injunction by focusing solely on the irreparable harm prong. Garcia bore the burden of showing that “irreparable injury is likely in the absence of’ the requested injunction. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). The only form of injury Garcia has alleged that could qualify as irreparable is the risk of death she faces as a result of the fatwa issued against her. Unlike the majority, I’m willing to assume that the risk of death qualifies as irreparable injury in this context. But under our decision in Perfect 10, Inc. v. Google, Inc., 653 F.3d 976 (9th Cir.2011), Garcia also had to prove a “causal connection” between the irreparable injury she faces and the conduct she hopes to enjoin. Id. at 982. In other words, she had to show that removing the film from YouTube would likely eliminate (or at least materially reduce) the risk of death posed by issuance of the fatwa.
The district court did not abuse its discretion by concluding, albeit for reasons different from those I offer here, that Garcia failed to satisfy the irreparable harm prong. The sad but unfortunate truth is that the threat posed to Garcia by issuance of the fatwa will remain whether The Innocence of Muslims is available on YouTube or not. Garcia is subject to the fatwa because of her role in making the film, not because the film is available on YouTube. The film will undoubtedly remain accessible on the Internet for all who wish to see it even if YouTube no longer hosts it. Bottom line: Garcia’s requested injunction won’t change anything about the content of the film or the part,' however limited, she played in its making.
Of course, Garcia’s role in making the film has been completely misunderstood. She never actually uttered the highly offensive words her character speaks in the film. She had no idea that the scenes in which she appeared would later be used as part of an anti-Islam diatribe, and she strongly opposes the film’s message. Correcting these misperceptions might well eliminate or reduce the threat Garcia faces, but she has already taken numerous steps to do just that. She has publicly denounced the film and done everything within her power — including bringing this lawsuit — to disassociate herself from the film’s hateful message. •
The declaration submitted by Garcia’s expert on Islamic and Middle Eastern law — the only evidence she offered that addresses causation directly — candidly describes the tenuous causation theory Garcia relies on. Garcia’s expert did not assert that removing the film from YouTube would likely cause the fatwa against her to be lifted. He instead noted that Garcia’s “public statements condemning the film here have been received in the Muslim world with controversy,” and opined that removing the film from YouTube would cause others to believe that Garcia’s condemnations are sincere: “If she is successful in pulling the content down from the internet, it will likely help her in terms of believability of her message condemning the film and its message.” (Emphasis added.)
In my view, this sparse evidence does not show that removing the film from YouTube would be likely to mitigate the risk of *749 death Garcia faces. At most, the expert’s bare assertion establishes that granting the requested injunction will have an incremental but impossible-to-measure effect on Garcia’s credibility. The declaration notably stops short of suggesting that the injunction would have any impact (let alone a likely impact) on the actions of the necessary audience: the cleric who issued the fatwa and those who would be inclined to carry it out. Nor is it obvious why success in getting the district court to order the film’s removal from YouTube would be critical to bolstering the believability of Garcia’s message. Demanding the take-down injunction seems to speak loudly and clearly in its own right about the sincerity of her views on the film.
The district court did not abuse its discretion in concluding that, on this record, Garcia failed to satisfy the irreparable . harm prong. Under our decision in Perfect 10, that alone requires us to affirm the district court’s denial of a preliminary injunction. 653 F.3d at 982. I concur in the judgment for that reason only.