

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RONALD K. HOOKS, Regional Director
of the Nineteenth Region of the National
Labor Relations Board, for and on behalf
of the NATIONAL LABOR RELATIONS
BOARD,

               Petitioner-Appellee,

  v.

NEXSTAR BROADCASTING, INC.,
DBA KOIN-TV,

            Respondent-Appellant.

No.   21-35252

D.C. No. 3:21-cv-00177-MO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted October 6, 2021
Portland, Oregon

Before: William A. Fletcher, Sandra S. Ikuta, and Daniel A. Bress, Circuit Judges.

Opinion by Judge Ikuta;
Dissent by Judge W. Fletcher

**SUMMARY**<sup></sup>

## National Labor Relations Act / Mootness

The panel vacated the district court's order granting a petition of the Regional Director of the National Labor Relations Board ("Board") for preliminary injunctive relief under § 10(j) of the National Labor Relations Act ("NLRA") in the Board's action alleging that Nexstar Broadcasting, Inc. committed unfair labor practices in violation of the NLRA.

Based on a finding that the Regional Director was likely to succeed on the merits of the complaint and applying an inference of likely irreparable harm based on *Frankl ex rel. NLRB v. HTH Corp.*, 650 F.3d 1334 (9th Cir. 2011), the district court granted a preliminary injunction. After the district court issued the preliminary injunction, an administrative law judge ruled in favor of the Regional Director, finding that Nexstar had violated § 8(a)(1) and (5) of the NLRA. The Board affirmed the ALJ decision and ordered relief for the union.

The panel first considered whether it had jurisdiction over the case. Because the Board has resolved the merits of the unfair labor practice complaint, the appeal of the district court's grant of a preliminary injunction under § 10(j) is moot, unless an exception to mootness applies. One exception is where disputes are capable of repetition, yet evading review. This court has applied this exception in the context of § 10(j) injunction proceedings using a two-prong analysis. Under the first prong (evading review), the panel considered whether the action at issue was inherently limited in duration. The panel held that a § 10(j) injunction proceeding is the type of case that is inherently limited in duration because the controversy over the injunction exists only until the Board issues its final merits decision, which typically occurs before there is time for full judicial review of the request for an injunction. The panel concluded that the § 10(j) injunction met the first prong. The panel held that the § 10(j) injunction also met the exception's second prong, because there was a reasonable expectation that the complaining party, Nexstar, will be subject to a petition for a § 10(j) injunction in the future. The panel rejected the Regional Director's argument that any new §10(j) injunction would raise a different

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

constellation of facts and legal proceedings, and therefore it was not reasonable to expect that the dispute over the specific legal issue in this appeal would recur. The panel concluded that the Board's issuance of its final order did not render this appeal moot.

The panel next considered whether the district court abused its discretion in granting the preliminary injunction. Under *Winter v. NRDC*, 555 U.S. 7 (2008), one factor is whether the Regional Director was likely to suffer irreparable harm in the absence of preliminary relief. The panel noted that this court has rejected a presumption of irreparable harm in the § 10(j) context, and *Frankl* considered how irreparable harm could be established in the § 10(j) context. *Frankl* established permissible inferences from the nature of the particular unfair labor practice at issue, and such permissible inferences are neither mandatory nor binding on a court.

The panel held that the district court improperly determined that *Frankl* required it to presume irreparable harm based on its finding that the Regional Director had a likelihood of success on the merits on his claims in violation of § 8(a)(1) of the NLRA. The record showed that the district court inferred there was a likelihood of success of irreparable harm solely due to its finding of a likelihood of success on the merits. The panel held that the district court misread *Frankl* as creating a mandatory presumption that required it to infer a presumed fact –irreparable harm—until contrary evidence was introduced. The panel further held that the evidence of likely success on the merits did not show irreparable harm. Based on the record, the panel concluded that the district court improperly applied a presumption in making its irreparable harm determination. Because the district court applied an erroneous legal standard, the district court abused its discretion in making its irreparable harm determination, and in granting the preliminary injunction.

Judge Fletcher dissented. He agreed with the Board that this appeal was moot, and there was no jurisdiction. The exception to mootness invoked by the majority did not apply to the appeal because it was far too fact-intensive to be capable of repetition in the manner required by the exception. If he were to reach the merits, Judge Fletcher would affirm the district court. The district court faithfully followed *Frankl* when it inferred, absent contrary evidence, that Nexstar's violation of § 8(a)(5) of the NLRA was likely to result in irreparable harm to the union if preliminary injunctive relief were not granted.

# COUNSEL

Charles P. Roberts III (argued), Constangy, Brooks, Smith & Prophete LLP, Winston-Salem, North Carolina; Steven B. Katz, Constangy, Brooks, Smith & Prophete LLP, Los Angeles, California; Robert A. Koch and Steven M. Wilker, Tonkon Torp LLP, Portland, Oregon; for Respondent-Appellant.

Jenevieve Louise Frank (argued) and Elizabeth DeVleming, Attorney; Paul A. Thomas, Trial Attorney; Laura T. Vazquez, Deputy Assistant General Counsel; Richard J. Lussier, Assistant General Counsel; Richard A. Bock, Associate General Counsel; Iva Y. Choe, Acting Deputy General Counsel; Peter Sung Ohr, Acting General Counsel; National Labor Relations Board, Washington, D.C.; United States National Labor Relations Board, Seattle, Washington; for Petitioner-Appellee.

IKUTA, Circuit Judge:

In evaluating a petition for injunctive relief pursuant to § 10(j) of the National Labor Relations Act (the NLRA), 29 U.S.C. § 167(d), while a charge of unfair labor practices is pending, a district court must evaluate the propriety of such relief on a case-by-case basis under the traditional four-factor test, without applying any presumptions or categorical rules. *See Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200, AFL-CIO*, 611 F.3d 483, 490 (9th Cir. 2010). "[W]hile a district court may not presume irreparable injury," it may, however, make permissible inferences based on evidence of violations of labor law. *Frankl v. HTH Corp.*, 650 F.3d 1334, 1362 (9th Cir. 2011). This case raises the question whether the district court here made a permissible inference, or relied on an improper presumption, in holding there was a likelihood of irreparable harm to union representation because of the continuation of an alleged unfair labor practice. We conclude that the district court mistakenly believed it was bound by a mandatory presumption to find a likelihood of irreparable harm, even though it had previously ruled that such a finding was unsupported by any evidence in the record. We therefore vacate the district court's order.

I

A

The NLRA makes it unlawful for an employer to engage in unfair labor practices, including the failure to bargain in good faith. 29 U.S.C. § 158. Among other violations, § 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise" of the employees' right to concerted action, *id.* § 158(a)(1), and § 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively," *id.* § 158(a)(5).

Under 29 C.F.R. § 102.9, any person may file a charge with the Regional Director designated by the National Labor Relations Board (the Board) as the Board's agent for the relevant region, *see id.* § 102.1(b), (e), alleging that a person has engaged in an unfair labor practice under the NLRA. After receipt of the charge, the Regional Director may request that the complainant submit evidence in support of the charge. *Id.* § 101.4. If, after an investigation, a charge appears to have merit, the Regional Director may issue a complaint and notice of hearing before an Administrative Law Judge (ALJ). *Id.* §§ 101.8, 101.10(a).

At the administrative hearing, the parties may call and examine witnesses, introduce evidence, and submit briefs and proposed findings of fact and conclusions of law. *Id.* § 101.10(a). After the ALJ has ruled on the charge, the

parties may file an "exception" (*i.e.*, an administrative challenge to the ALJ's decision), which causes the Board to review the case de novo.  *Id.* §§ 101.11(b), 101.12(a).  After the Board has issued its decision, any person aggrieved by the final order may petition for judicial review of the decision.  *Id.* § 101.14.[1]

While charges are pending,  the Regional Director may (with the approval of the Board's General Counsel) petition a federal district court for "appropriate temporary relief or [a] restraining order" before the final adjudication of the charge under § 10(j).  29 U.S.C. § 160(j).[2]  In granting an injunction under § 10(j), "district courts should consider traditional equitable criteria."  *See Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 459 (9th Cir. 1994) (en banc), *abrogated on other grounds by Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008).  This consideration is viewed "through the prism of the underlying purpose

---

[1] The Board may also petition for judicial enforcement of its final decision if the respondent does not comply with its orders.  *Id.* § 101.14.

[2] 29 U.S.C. § 160(j) provides:
The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

of § 10(j), which is to protect the integrity of the collective bargaining process and to preserve the Board's remedial power while it processes the charge." *Id.* at 459–60. These traditional factors are: (1) the likelihood of the moving party's success on the merits; (2) the likelihood that the moving party will suffer irreparable injury if injunctive relief is not granted; (3) the extent to which the balance of equities favors the respective parties; and (4) that an injunction is in the public interest. *See Winter*, 555 U.S. at 20.

B

Nexstar Broadcasting, Inc. owns and operates numerous local television stations. In January 2017, Nexstar acquired KOIN-TV, a local television station in Portland, Oregon, from LIN Television Corporation (LIN). At the time of the acquisition, employees at KOIN-TV in two bargaining units were represented by the Broadcasting and Cable Television Workers Sector of the Communications Workers of America, Local 51, AFL-CIO (referred to here as Local 51 or the union), pursuant to a collective bargaining agreement (CBA). When it acquired KOIN-TV, Nexstar adopted the CBA between Local 51 and LIN. By its terms, the CBA was effective from July 29, 2015, to July 28, 2017. The CBA was extended by agreement, but finally expired in September 2017.

Nexstar and Local 51 began negotiating for a new agreement in June 2017. From June 2017 until December 2019, the parties met for over 20 two-day bargaining sessions. A federal mediator assisted with the negotiations between March 2018 and December 2019. By December 2019, many issues had been resolved, but several fundamental disagreements remained. Among other items, Nexstar would not agree to collect the union's membership dues and initiation fees on Local 51's behalf through deductions from employees' paychecks. In particular, Nexstar did not want to collect the initiation fee of three weeks of pay (an average amount of $3,000), because Nexstar deemed it to be too high

compared to the initiation fees of other unions. The parties also could not agree on the scope of healthcare coverage.[3]

Negotiations made little progress through 2019. On January 8, 2020, Nexstar told the union it was withdrawing its recognition of Local 51, for both bargaining units, due to Nexstar's "good faith, reasonable belief" that Local 51 no longer enjoyed the majority support of the employees in either bargaining unit at KOIN-TV. Nexstar concluded, based on multiple conversations with employees, that 14 out of the 27 employees in one bargaining unit, and at least 6 out of the 11 employees in the other bargaining unit, did not support Local 51. On the same day, Nexstar removed Local 51's bulletin boards. Nexstar also told employees in the

---

[3] During this period, the parties filed numerous unfair labor practice charges against each other with the Board. Local 51 filed charges against Nexstar claiming, among other things, that Nexstar (1) had changed past practices by requiring employees to complete a driving history background check and posting employees' work schedules two weeks early, (2) had issued a written warning to a union representative, Ellen Hansen, for allegedly harassing a coworker during a conversation, and (3) had, in two instances, failed to give the union certain information. *See Nexstar Broad., Inc.*, No. 19-CA-240187, 2021 WL 494995 (Jan. 14, 2021); *Nexstar Broad., Inc.*, 370 N.L.R.B. No. 68 (Jan. 7, 2021); *Nexstar Broad., Inc.*, 369 N.L.R.B. No. 61 (Apr. 21, 2020). Nexstar, in turn, filed unfair labor practice charges against Local 51 for failing to respond to Nexstar's request for information related to bargaining proposals, and for sending out "Welcome to NABET-CWA" letters to new employees, which misleadingly stated that the CBA required them to join the union and make payments within thirty days of being hired, even though the CBA was no longer in effect. The Board sought enforcement of the charges against Nexstar, but the Board settled or otherwise resolved the unfair labor practice charges against Local 51.

7

two bargaining units that it intended to give them a 1.5% wage increase after 45 days.[4]

In February 2020, Local 51 began gathering evidence to demonstrate that the union still retained majority support. Ellen Hansen, a union representative, began asking employees to sign a petition in support of the union, but a Nexstar manager allegedly interfered with her activities by interrupting her and telling her not to talk about the union or to hand out union bulletins. According to the Regional Director, "in the wake of respondent's abrupt withdrawal of recognition and even its threats" that employees could not talk about the union or distribute union bulletins, other "employees were very concerned that they could be retaliated against or disciplined unlawfully." Therefore, "while almost all employees were willing to sign and signify their continued support for the union, many employees expressed to [Hansen] that they would only do so if their names were anonymous." Despite these employee concerns, and in the face of alleged anti-union intimidation efforts, Local 51 stated that it collected signatures—from 19 out of the 27 employees in one bargaining unit, and 7 out of the 11 employees in the second bargaining unit—for a petition supporting the union. Because employees had

---

[4] In March 2020, Nexstar gave employees a 1.5% wage increase retroactive to January 1, 2020.

expressed a fear of retaliation from Nexstar, Local 51 did not provide the signatures to Nexstar. Instead, the union asked a Catholic priest to certify that the petition contained the signatures of a majority of employees in each bargaining unit.

Hansen testified that after Nexstar had withdrawn recognition of the union, fewer employees reached out to her in her capacity as a bargaining representative. The union's president, Carrie Biggs-Adams, likewise said she heard from only a few people in the bargaining unit after Nexstar withdrew its recognition of the union, but reiterated that employees "expressed repeatedly that people wanted to continue to have the union" and "didn't want the [u]nion to go away," even though they "were afraid of disciplinary or harassing actions that" Nexstar might take if they expressed such sentiments openly.

## C

In response to the union's unfair labor practice charges, the Regional Director filed a consolidated administrative complaint against Nexstar with the Board on June 30, 2020, alleging, among other charges, that Nexstar had violated § 8(a)(1) (interference with concerted action) and § 8(a)(5) (failure to bargain in good faith) by withdrawing recognition from the union, making unilateral changes

to working conditions, and coercing employees.  The ALJ ruled in favor of the Regional Director on June 11, 2021.[5]

On February 2, 2021, while the matter was pending before the ALJ, and approximately 13 months after Nexstar withdrew its recognition of Local 51, the Regional Director filed a petition in district court for a preliminary injunction pursuant to § 10(j) of the NLRA.  The petition claimed that Nexstar was engaging in unfair labor practices under §§ 8(a)(1) and (5), and that without a cease and desist order and an order reinstating Local 51 while the Regional Director's complaint was pending, "employee support for the Union will be forever lost and Respondent will effectively accomplish its unlawful goal of permanently ridding its workplace of union supporters."

At the hearing on the petition, the district court walked through the criteria for granting the injunctive relief requested under § 10(j).  The requested relief was reinstating the union and requiring Nexstar to bargain in good faith during the interim period while the labor action was pending.

---

[5] The ALJ issued her decision on June 11, 2021, concluding that Nexstar violated §§ 8(a)(1) and (5) of the NLRA by withdrawing recognition from, and refusing to bargain in good faith with, Local 51.  *See Nexstar Broadcasting, Inc. d/b/a KOIN-TV*, No. 19-CA-248735, 2021 WL 2414030 (June 11, 2021).

On the first factor, likelihood of success on the merits, the district court stated that the Regional Director was likely to succeed on his claim that Nexstar violated the NLRA in withdrawing recognition of the union without objective evidence that the union had lost majority support, and by making unilateral changes in employment conditions. The district court also stated that the Regional Director had raised serious questions going to the merits that Nexstar violated the NLRA in discouraging concerted action.

The court spent little time on the other two factors. Regarding the third factor, balance of the equities, the court determined that if the Regional Director showed irreparable harm, he also showed the equities weighed in his favor. Because Nexstar had not shown any equities weighing in its favor, and given the likelihood of success on the merits, the court stated that this factor favored the Regional Director. As to the fourth factor, the public interest, the court held that the public interest probably did not favor either side, but it noted that the Regional Director's 13-month delay between the unfair labor practice (Nexstar's withdrawal of union recognition) and the Regional Director's petition for an injunction might affect the evaluation of this factor.

The district court had more difficulty with the second factor, irreparable harm. As the district court put it, the Regional Director's theory of irreparable

11

harm was that, absent an order reinstating the union, the Board would be unable to issue an effective remedial order at the end of the Board proceedings, because during the intervening period, there could be such a loss of employee support for the union that a majority of employees would no longer want the union to be reinstated. In order to evaluate this claim of irreparable harm, the district court asked the Regional Director for evidence that employee support for the union was dwindling.

In response to this request for evidence, the Regional Director pointed to Hansen's testimony that after Nexstar withdrew its recognition of the union, employees who signed the petition in support of the union were fearful of retaliation. The district court did not find this evidence persuasive because Hansen's testimony showed that the employees were merely hiding their strong support for the union. The Regional Director ultimately acknowledged that he had testimonial evidence only of loss of *open* support of the union.

The court then explained what evidence of dwindling support of the union might look like. First, the Regional Director could have submitted two affidavits: "one that says that support dropped, and another that says that the reason it dropped was because of loss of union recognition." Second, the Regional Director could have supplemented the trial record "with some employee who says, 'You

know, now a year has gone by, and now I really don't need the union anymore.'"

The court also noted that it would have been simple "to actually have a percipient witness" or affiant making such a statement.

The Regional Director acknowledged he had no evidence or statements from witnesses of the sort requested by the court. Instead, the Regional Director asked the court to make the inference of irreparable harm suggested by certain Ninth Circuit cases. According to the Regional Director, the Ninth Circuit has held there is an inference that an employer's refusal to engage in bargaining will likely result in irreparable harm to employee support for their union. The Regional Director asked the court to rely "on the Board's assumptions and even the Ninth Circuit's assertion that there is a high likelihood, if not an inference, of irreparable harm that will only get worse by the day absent the prayed for injunctive relief[] in cases like these."

The court concluded that the decision whether to issue an injunction turned on the question of irreparable harm. The court stated that the record contained no factual evidence of irreparable harm, and the question was whether it was bound by Ninth Circuit precedent. It explained:

> . . . I'm going to think about that one for a few days, I think, because the record in front of me is not a record that shows factually any irreparable harm. There isn't a factual record showing that. The record is, in fact, to the

13

contrary, and so that's troubling to me.  The record is also dated, and so there's this -- for example, this intervening event where there's employee support, albeit frightened and anonymous, for the union after withdrawal, and then subsequently there's the granting of the very -- well, to some degree, the raise that the union bargained for and didn't get. So one can imagine that might cause diminishment in support.  Of course, my problem is one can only imagine it, because no one said so on the record, and that's -- I just can't grant injunctions on attorney argument without a showing of any factual support for those arguments. So that's on the one hand.

On the other hand, the Ninth Circuit has been pretty firm about this. And I need to just take another look at whether the Ninth Circuit has essentially said that if I find X, Y will follow; X being likelihood of success on a withdrawal of support case and Y being irreparable harm.

Therefore, the court took the issue under advisement.

A week later, on March 29, 2021, the district court entered its opinion and order.  The opinion first stated that during the prior hearing, the court had ruled from the bench in favor of the Regional Director on "likelihood of success on the merits, balance of the equities, and public-interest factors," but had taken "under advisement the issue of irreparable harm." On that issue, the court stated:

I was concerned about Petitioner's showing of irreparable harm because the evidence submitted by Petitioner shows there was majority support for the union immediately following Respondent's withdrawal of recognition.  But under *Frankl v. HTH Corp.*, in § 8(a)(5) cases when there is a likelihood of success on the merits there is an inference of irreparable harm to union representation from the continuation of the unfair labor practice.  650 F.3d 1334, 1362–63 (2011).  None of the evidence, including that in the supplemental record, shows what support for the union is like now after more time has passed since the withdrawal of recognition.  In the absence of any contrary evidence, I apply the inference stated in *Frankl*—an inference

14

> that grows in strength the longer the time gap between the withdrawal of recognition and the request for injunctive relief. Accordingly, I GRANT Petitioner's Petition for Preliminary Injunctive Relief.

In other words, the court ruled that despite the absence of any evidence in the record supporting the Regional Director's claim of irreparable harm, it would apply the inference derived from *Frankl*, and conclude there was irreparable harm.

Nexstar timely appealed, arguing that the district court had improperly interpreted Ninth Circuit precedent as requiring an automatic inference of a likelihood of irreparable harm whenever there was a likelihood of success on the merits in cases alleging the failure to bargain in good faith under § 8(a)(5) of the NLRA.

Before this Court could address Nexstar's appeal of the preliminary injunction, the Board issued its final decision in the underlying administrative proceeding on July 27, 2022, finding that Nexstar engaged in unfair labor practices and ordering it to cease and desist. *Nexstar Broad., Inc. d/b/a Koin-TV & Nat'l Ass'n of Broad. Emps. & Technicians, the Broad. & Cable Television Workers Sector of the Commc'ns Workers of Am., Loc. 51, AFL-CIO*, 371 N.L.R.B. 118 (2022). The Regional Director then moved to dismiss the case as moot, on the ground that the district court's preliminary injunction expired by operation of law

upon the Board's final resolution of the administrative case.  We ordered both parties to file supplemental briefing regarding mootness.

## II

## A

We first consider whether we have jurisdiction over this case.  Because the Board has now resolved the merits of the unfair labor practice complaint, the appeal of the district court's grant of a preliminary injunction under § 10(j) is moot, unless an exception to mootness applies.  *See Johansen ex rel. NLRB v. Queen Mary Rest. Corp.*, 522 F.2d 6, 7 (9th Cir. 1975) (per curiam).[6]  The Supreme Court has recognized an exception to mootness for disputes that are "capable of repetition, yet evading review."  *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (internal quotations and citation omitted).  This exception applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again."  *Id.* (quoting *Spencer v. Kemna*,  523 U.S. 1, 17 (1998)).  An issue can be

---

[6]*Johansen*'s brief two-paragraph per curiam decision stated only that the parties agreed that the Board's decision on the unfair labor practices complaint "rendered the resolution of the injunction proceeding moot," 522 F.2d at 7, and accordingly did not address exceptions to this mootness rule.

"inherently limited in duration such that it is likely always to become moot before federal court litigation is completed." *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007). The exception "is concerned not with particular lawsuits, but with classes of cases that, absent an exception, would *always* evade judicial review." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) (emphasis in original); *see also* 13C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.8 (3d ed. 2013) (listing cases involving prior restraints on free speech, government investigations, election disputes, labor-management disputes, and business regulation disputes, among others, as examples of "rough groupings" of the types of disputes that are covered by the exception). In such classes of cases, "orderly and effective judicial review would be precluded if we hewed strictly to the requirement that only a presently live controversy presents a justiciable question." *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 786 (9th Cir. 2012).

We have applied this exception to mootness in the context of § 10(j) injunction proceedings. *See Miller*, 19 F.3d at 453. In *Miller*, a district court issued a preliminary injunction under § 10(j) requiring the employer to recognize and bargain with a union while an unfair labor practice case was pending before the Board. After the Board issued its final decision on the merits, we considered

17

whether we had jurisdiction over a cross-appeal of the court's order. Applying the two-prong test, *Miller* concluded that "[t]here is no question that a § 10(j) injunction meets the first criterion." *Id.* at 453. Because "evading review" meant "evading Supreme Court review," *id.*, we reasoned that "it may be difficult for a court of appeals—much less the Supreme Court—to reach a final decision on the propriety of a § 10(j) injunction before the Board's adjudication is finished." *Id.*

*Miller* also concluded that the second prong of the exception was met, because there was a reasonable expectation that the dispute would recur for both the employer and the Board. *Id.* at 454.[7] We concluded that because the employer was a large employer that dealt with multiple unions, there was "a reasonable expectation that another labor dispute will arise and the Board may again seek § 10(j) relief against it." *Id.* We further concluded that "it is certain the Board will continue to litigate § 10(j) injunctions in district courts throughout the circuit," *id.* and "[t]he same issue, arising from confusion over the appropriate standard to be applied in § 10(j) proceedings, will recur in future litigation," *id.* Therefore, we ruled "that the Board's issuance of its final order does not render this appeal moot." *Id.*

---

[7] We refrained from deciding whether the employer or the Board was the complaining party, defined as "the party who is raising the challenge," *id.* 454 at n. 2, because the parties had cross-appealed.

The same analysis applies here. For the first prong (evading review), we consider whether the action at issue is "inherently limited in duration," *Lohn*, 511 F.3d at 965, because the exception was designed to address the type of situation that inherently evades judicial review, *see Protectmarriage.com-Yes on 8*, 752 F.3d at 836 (noting, by means of example, that "a woman can only obtain an abortion so long as she remains pregnant," and that a court "can only invalidate a temporary injunction so long as that injunction remains in effect").

We have already determined that a § 10(j) injunction proceeding is the type of case that is inherently limited in duration because the controversy over the injunction exists only until the Board issues its final merits decision, which typically occurs before there is time for full judicial review of the request for an injunction. *Miller*, 19 F.3d at 454. For this reason, the appeal of a § 10(j) injunction has a duration that is "too short to be fully litigated prior to cessation or expiration." *Kingdomware Techs*., 579 U.S. at 170. The history of this case is consistent with our conclusion in *Miller*. Here, the Board issued a final merits decision just 21 months after the Regional Director filed the last of the four charges. The Supreme Court has indicated that "a period of two years is too short to complete judicial review," *Kingdomware Techs*, 579 U.S. at 170; *see also S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514–16 (1911) (holding that order that

19

expires by its terms after two years evades review).  We have reached the same conclusion.  *See, e.g., Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir.1999) (concluding a that two-year special use permit would be of a "duration . . . too short to allow full litigation before the permit expires.").[8] Because an appeal of a § 10(j) injunction is likely to be mooted by the Board's decision "before our review (let alone the Supreme Court's) could be completed," *Alcoa, Inc.*, 698 F.3d at 787, we follow *Miller* in concluding that the "§ 10(j) injunction meets the first criterion [evading review]," 19 F.3d at 453.

The § 10(j) injunction also meets the exception's second criterion, because there is a reasonable expectation that the complaining party ("the party who is raising the challenge," *id.* at n.2), here Nexstar, will be subject to a petition for a § 10(j) injunction in the future.  "The complaining party need only show that it is reasonable to expect that it will engage in conduct that will once again give rise to the assertedly moot dispute; it need not show that there is a demonstrated probability that the dispute will recur." *Id.* at 454 (cleaned up).  Nexstar, like the

---

[8] Moreover, the Board filed for injunctive relief in district court at least 13 months after filing the complaint with the ALJ, which made it more likely that the Board would issue its final merits decision the district court's order on the § 10(j) petition could receive full judicial review.  Any practice by the Regional Director of delaying filing a petition for injunctive relief would increase the chances that there would be insufficient time for complete judicial review.

employer in *Miller*, is a large employer that owns over 200 local television stations, twenty of which are unionized, and is engaged in recurring collective bargaining negotiations regarding 40 collective bargaining agreements with multiple labor unions. Thus, there is "a reasonable expectation that another labor dispute will arise and the Board may again seek § 10(j) relief against it." *Id.*

In the NLRB's answering brief, the Regional Director argues that any new § 10(j) injunction would raise a different constellation of facts and legal proceedings, and therefore it is not reasonable to expect that the dispute over the specific legal issue in this appeal would recur. We disagree. In *Miller*, we determined that the "important legal issue" of the correct standard to be applied in reviewing § 10(j) petitions would "continue to come up, and escape review, unless we provide it in this case." *Id.* at 453. That same "important legal issue" is implicated here. The parties dispute whether the district court committed legal error by misinterpreting the rule announced by *Frankl* in concluding there was a likelihood of irreparable harm, the second prong of the injunction standard. Because *Frankl* is the leading decision regarding the standard to apply in § 10(j) injunction proceedings, it is reasonable to expect that misinterpretations of the legal rule announced by *Frankl* will recur in future cases. As in *Miller*, "the Board will continue to litigate § 10(j) injunctions in district courts throughout the circuit"

21

and "[t]he same issue, arising from confusion over the appropriate standard to be applied in § 10(j) proceedings, will recur in future litigation," including with Nexstar. *Id.* at 454. It is important for the Board and for employers such as Nexstar to know what criteria will be applied when the Board requests interim relief under § 10(j). Therefore, *Miller*'s determination that the employer would be required to contest the same legal issue in future litigation is equally applicable here.

Therefore, we conclude that the Board's issuance of its final order does not render this appeal moot. The dispute over standards is within the exception to the case-and-controversy requirement for actions that are capable of repetition, yet evading review.[9]

B

"We review the grant of an injunction pursuant to § 10(j) of the NLRA for an abuse of discretion." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1186 (9th Cir. 2011). "The district court abuses its discretion if it relies on a clearly erroneous finding of fact or an erroneous legal standard." *Id.* at 1187 (internal quotations and citation omitted). We apply "the traditional framework that informs

_____

[9] Therefore, the NLRB's motion to dismiss the case as moot is denied (Dkt. 47).

our equity jurisdiction" in determining whether to grant a preliminary injunction under § 10(j). *Miller*, 19 F.3d at 456. Therefore, "when a Regional Director seeks § 10(j) relief, he 'must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest.'" *Frankl*, 650 F.3d at 1355 (quoting *Winter*, 555 U.S. at 20).

"[T]he propriety of injunctive relief . . . must be evaluated on a case-by-case basis in accord with traditional equitable principles and without the aid of presumptions or a 'thumb on the scale' in favor of issuing such relief." *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 980–81 (9th Cir. 2011) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010)). The Supreme Court has "consistently rejected invitations to replace traditional equitable considerations" with presumptions or categorical rules. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006). In *eBay*, for instance, the Court rejected the Federal Circuit's categorical rule that in patent cases "once infringement and validity have been adjudged," an injunction can be denied only "in the unusual case, under exceptional circumstances and in rare instances . . . to protect the public interest." *Id.* at 393–94 (cleaned up). According to the Court, the Federal Circuit erred in its "categorical grant of such relief" because "the decision whether to grant or deny

23

injunctive relief rests within the equitable discretion of the district courts," and "such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* at 394. Similarly, in *Monsanto*, the Court rejected the presumption "that an injunction is the proper remedy for a NEPA violation except in unusual circumstances." *Monsanto*, 561 U.S. at 157. The Court held that "[n]o such thumb on the scales is warranted," *id.*, and that "a court must determine that an injunction should issue under the traditional four-factor test" for injunctive relief, *id.* at 158 (emphasis omitted).

We have previously acknowledged that the Supreme Court decisions (*Winter*, *eBay*, and *Monsanto*) rejecting presumptions abrogated our prior decisions that had adopted a presumption of irreparable harm. *See Perfect 10, Inc.*, 653 F.3d at 980 (holding that our "longstanding rule that '[a] showing of a reasonable likelihood of success on the merits in a copyright infringement claim raises a presumption of irreparable harm" was effectively overruled because it was "clearly irreconcilable with the reasoning' of the Court's decision in *eBay*") (cleaned up). We reached the same conclusion in the § 10(j) context, and held that *Winter* abrogated the rule "that a court may presume irreparable harm in § 10(j) and § 10(l) cases if a likelihood of success on the merits in the unfair labor practice

24

proceeding is established." *Frankl*, 650 F.3d at 1362 (citing *Operative Plasterers'* *& Cement Masons' Int'l Ass'n Loc. 200, AFL-CIO*, 611 F.3d at 494).

Following our rejection of a presumption of irreparable harm in the § 10(j) context, *Frankl* grappled with how irreparable harm could be established in such cases. *Frankl* confirmed that "a district court may not presume irreparable injury with regard to likely unfair labor practices generally." *Id.* Nevertheless, *Frankl* held that "irreparable injury is established if a likely unfair labor practice is shown along with a present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later relief." *Id.* This is because "inferences from the nature of the particular unfair labor practice at issue remain available." *Id.*

*Frankl* then suggested conclusions that could logically be drawn from evidence of different types of unfair labor violations. For instance, *Frankl* stated that a violation of § 8(a)(5) (failure to bargain in good faith) may cause an irreparable injury to union representation because "the result of an unremedied refusal to bargain with a union, standing alone, is to discredit the organization in the eyes of the employees, to drive them to a second choice, or to persuade them to abandon collective bargaining altogether." *Id.* (quoting *Karp Metal Prods. Co.*, 51 N.L.R.B. 621, 624 (1943)). "Thus, a finding of likelihood of success as to a

§ 8(a)(5) bad-faith bargaining violation in particular, along with permissible inferences regarding the likely effects of that violation, can demonstrate the likelihood of irreparable injury." *Id.* at 1363. Such a permissible inference could not be drawn, however, if there were "unusual circumstance indicating that union support is not being affected or that bargaining could resume without detriment as easily later as now." *Id.*

Similarly, *Frankl* noted that a violation of § 8(a)(3) (discrimination against employees for collective organization) "risks a serious adverse impact on employee interest in unionization and can create irreparable harm to the collective bargaining process." *Id.* (quoting *Pye v. Excel Case Ready*, 238 F.3d 69, 74 (1st Cir. 2001)); *see also Avanti Health*, 661 F.3d at 1191–92 (stating that a failure to bargain in good faith leads to a "myriad of irreparable harms" and providing examples of four such adverse effects).

*Frankl*'s distinction between an impermissible presumption of irreparable harm when the Regional Director is likely to succeed in showing a violation under § 8(a)(5), and a "permissible inference[] regarding the likely effects of that violation," 650 F.3d at 1363, is consistent with the well-established distinction between a presumption and a permissible inference. "A rule of presumption is simply a rule changing one of the burdens of proof, i. e., declaring that the main

26

fact will be inferred or assumed from some other fact until evidence to the contrary is introduced." *United States v. Black*, 512 F.2d 864, 868 n.7 (9th Cir. 1975) (quoting 4 Wigmore, Evidence § 1356, at 857 (Chadbourn rev. 1972)); *see also* Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption.").[10]  Therefore, a "mandatory presumption instructs the [trier of fact] that it must infer the presumed fact if [one party] proves certain predicate facts." *Franklin*, 471 U.S. at 314.  Thus, in an employment discrimination suit under Title VII, once the plaintiff has carried the burden of establishing a prima face case of discrimination, the prima facie case creates "a legally mandatory, rebuttable presumption," that "the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 & n.7 (1981).  This presumption shifts the burden of proof to the employer, and "if the employer is silent in the face of the presumption,

---

[10] The Supreme Court has also distinguished between conclusive and rebuttable presumptions. *Cnty. Ct. of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 157 (1979).  "A conclusive presumption removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption" while a "rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted." *Francis v. Franklin*, 471 U.S. 307, 314 n.2 (1985), *holding modified by Boyde v. California*, 494 U.S. 370 (1990).

the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Id.* at 254.

By contrast, "[a] permissive inference suggests to the [trier of fact] a possible conclusion to be drawn if [a party] proves predicate facts, but does not require the [trier of fact] to draw that conclusion." *Francis*, 471 U.S. at 314. In other words, a permissible inference tells the trier of fact that evidence gives "rise to a permissive inference available only in certain circumstances," which "could be ignored by the [trier of fact] even if there was no affirmative proof offered" in rebuttal. *Ulster Cnty.*, 442 U.S. at 161. Such a permissible inference "does not relieve [a party] of its burden of persuasion because it still requires the [party] to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Francis*, 471 U.S. at 314.

Whether the presumptive-like device is described as a presumption or a permissible inference is not significant when it comes to assessing its effect, and hence its legal validity. *See Black*, 512 F.2d at 868 (analyzing a burden shifting statute as a presumption, because it "operates precisely like" a presumption, although not worded in presumptive language). Rather, courts take a functional approach and consider whether a presumption device has a "conclusive or persuasion-shifting effect." *Sandstrom v. Montana*, 442 U.S. 510, 519 (1979)

28

(discussing presumptions in jury instructions); *see also Burdine*, 450 U.S. at 254 & n.7 (noting that "[e]stablishment of the prima facie case" in a Title VII case creates a "legally mandatory, rebuttable presumption.").

Because *Frankl* established permissible "inferences from the nature of the particular unfair labor practice at issue" which "remain available," 650 F.3d at 1362, such permissible inferences are, by definition, neither mandatory nor binding on a court. Nor do they relieve the Regional Director of his burden of persuading the court that "the suggested conclusion should be inferred based on the predicate facts proved." *Francis*, 471 U.S. at 314. A court making "permissible inferences" when a Regional Director attempts to demonstrate a likelihood of irreparable harm may rely on the same evidence the Regional Director used to demonstrate a likelihood of success on the merits because some evidence may have probative value for both inquiries. *See Frankl*, 650 F.3d at 1363 (explaining that in assessing the likelihood of irreparable harm, the district court may consider "[t]he same evidence and legal conclusions" that were relevant to likelihood of success on the merits, "along with permissible inferences"); *see also Avanti Health*, 661 F.3d at 1195 (same). But the inquiries into likelihood of success on the merits and likelihood of irreparable harm are distinct even if the same facts can be used to show both. Thus, a court is free to determine that the Regional Director is likely to

succeed on the merits of an unfair labor practice claim, and at the same time is not entitled to preliminary injunctive relief because there is inadequate evidence that the union is likely to suffer irreparable harm. A permissible inference, as adopted in *Frankl*, does not change the Regional Director's burden of demonstrating likely irreparable harm, and the district court must make a finding of irreparable harm that is based on evidence in the record. The burden of proving the existence of "a present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later relief," *Frankl*, 650 F.3d at 1362, remains with the Regional Director.

The dissent does not dispute this legal framework or our conclusion that *Frankl* does not impose a mandatory presumption of irreparable harm. Indeed, the dissent agrees that *Frankl* did not establish "that there is a required inference of irreparable harm based solely on the type of unfair labor practice at issue." Dissent at 23. The dissent notes that such an "inference was 'available,'" *id.*, but concedes that it is only permissive, such that "a court *may* draw an inference based on the nature of the unfair labor practice," *id.* at 19–20 (emphasis added); *see also id.* at 20 (stating that "courts *are permitted* to draw an 'inference' that [irreparable] harm is present or impending.") (emphasis added). And the dissent also agrees that the "likelihood of irreparable harm must be established separately rather than

30

presumed based solely [] on a finding of a likelihood of success." *Id.* at 19.

Finally, the dissent agrees that "independent factual support of likely irreparable

harm is *not* required when the court finds evidence of certain unfair labor practices,

including failure to bargain in good faith." *Id.* at 24. As we explained, *supra* at 29,

the Regional Director may rely on the same evidence to show both likelihood of

success on the merits and a likelihood of irreparable harm. Although the dissent

makes the unsupported claim that we "effectively overrule *Frankl*," Dissent at 25,

the dissent's characterization of *Frankl* matches ours. Rather, our dispute with the

dissent is limited to the question whether the district court misinterpreted the legal

framework in this case.

C

We now turn to the question whether the district court improperly

determined that *Frankl* required it to presume irreparable harm based on its finding

that the Regional Director had a likelihood of success on the merits on his claims

of violations of § 8(a)(1) (interference with concerted action) and § 8(a)(5) (failure

to bargain in good faith). A review of the district court's rulings confirms that it

did so.

First, a walk through the record shows the district court inferred there was a

likelihood of irreparable harm solely due to its finding of a likelihood of success on

the merits. At the hearing in which the district court ruled from the bench, the district court found that there was a likelihood of success on the merits. It then considered the Regional Director's argument that support for the union was dwindling, which the court held was the sole colorable ground supporting the Regional Director's claim of irreparable harm.[11] But the district court found there was no evidence in the record supporting this theory; it stated that "the record is, in fact, to the contrary," and showed that support for the union was *not* dwindling. Given the lack of evidence supporting the Regional Director's theory of irreparable harm, the court concluded that it could not "grant injunctions on attorney argument without a showing of any factual support for those arguments."

Instead of denying the motion for § 10(j) relief based on the lack of evidence of irreparable harm, the district court stated that it would first review Ninth Circuit caselaw: "And I need to take just another look at whether the Ninth Circuit has

---

[11] Although the district court noted that the Regional Director alleged "two or three ways" there could be irreparable harm, the court concluded that only his allegation of dwindling support for the union was colorable. The court rejected the Regional Director's claim that "national labor policy" would be harmed absent injunctive relief, stating that the case does not represent "much of anything in that category of irreparable harm." And the court determined that the Regional Director's second argument (described by the dissent as a separate basis for the Regional Director's claim of irreparable harm, Dissent at 13) was "just an explanation of the second argument" that there would be irreparable harm to the efficacy of the remedial order due to a "loss of employee support for the union" absent injunctive relief.

32

essentially said that if I find X, Y will follow; X being likelihood of success on a withdrawal of support case and Y being irreparable harm." This formulation— that a trier of fact must presume irreparable harm based on a likelihood of success on the merits— constitutes a mandatory presumption. *See Black*, 512 F.2d at 889.

The district court's subsequent written opinion makes clear that it misread *Frankl* as creating a mandatory presumption that required it to infer a presumed fact (here irreparable harm) "until evidence to the contrary is introduced." *Black*, 512 U.S. at 868 n.7. The district court first stated the presumption that "under *Frankl v. HTH Corp.*, in § 8(a)(5) cases when there is a likelihood of success on the merits there is an inference of irreparable harm to union representation from the continuation of the unfair labor practice." The court then acknowledged that the Regional Director had not presented any evidence supporting his theory of irreparable harm. Rather, "the evidence submitted by [the Regional Director] shows there was majority support for the union immediately following [Nexstar's] withdrawal of recognition," and "[n]one of the evidence, including that in the supplemental record, shows what support for the union is like now after more time has passed since the withdrawal of recognition." Although the Regional Director had not adduced any evidence, a mandatory presumption would require a court to infer irreparable harm unless "evidence to the contrary is introduced," *Black*, 512

33

U.S. at 868 n.7.  Consistent with this rule, the court shifted the burden of proof to Nexstar to come forward with opposing evidence.  The court then held that because Nexstar had not introduced "evidence to the contrary," it was required to infer irreparable harm in favor of the Regional Director, stating:  "[i]n the absence of any contrary evidence, I apply the inference stated in *Frankl*" and granted the Regional Director's petition for § 10(j) relief.  *Cf. Burdine*, 450 U.S. at 254 & n.7 (holding in the Title VII context that the plaintiff's prima facie case creates "a legally mandatory, rebuttable presumption" that shifts the burden of proof to the employer, and "if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff").  In short, the court interpreted *Frankl* as requiring it to infer the presumed fact (irreparable harm) once the Regional Director had proven likelihood of success on the merits, in the absence of contrary evidence adduced by Nexstar.  *See Francis*, 471 U.S. at 314.  This constitutes a mandatory presumption.  *Id.*

The dissent argues that the district court merely applied a permissible inference, not a mandatory presumption.  In the dissent's reading of the record, the district court elected to make the "available inference under *Frankl*," after it "looked to see if there was evidence in the record to suggest that the inference should not be drawn."  Dissent at 23.  The district court did not need to find any

"independent factual support of likely irreparable harm," the dissent claims, because it could rely on evidence of unfair labor practices. *Id.* at 24. We disagree with the dissent's reading of the record. The dissent overlooks the fact that the district court previously determined that the Regional Director's evidence of unfair labor practices was insufficient to show irreparable harm. Specifically, the court had ruled that there was no evidence in the record "that shows factually any irreparable harm," and that "the record is, in fact, to the contrary." Therefore, even though evidence of unfair labor practices may support a finding of irreparable harm in some cases, it did not do so in this case. Because the evidence of likely success on the merits did not show irreparable harm, we must conclude that the district court's ruling in favor of the Regional Director was based on the mistaken view that *Frankl* created a mandatory presumption.

Based on this record, we conclude that the district court improperly applied a presumption in making its irreparable harm determination. Because the district applied an erroneous legal standard, *see Operative Plasterers' & Cement Masons' Int'l Ass'n Loc. 200, AFL-CIO*, 611 F.3d at 490, the district court abused its discretion in making its irreparable harm determination (and by extension, its

grant of the preliminary injunction).  Therefore, we vacate the district court's

opinion.[12]

**VACATED.**[13]

---

[12] Nexstar does not challenge the district court's determination that the Regional Director established a likelihood of success on the merits, and that the balance of equities weighed in his favor.  Because the district court did not explain its reasoning in determining that the injunction would be in the public interest, we do not address this issue.

[13] Each party will bear their own costs on appeal.

*Hooks v. Nexstar Broadcasting, Inc.*, No. 21-35252

W. FLETCHER, Circuit Judge, dissenting:

The National Labor Relations Act ("NLRA" or "Act") confers subject matter jurisdiction on federal courts to enjoin putative unfair labor practices while the National Labor Relations Board ("NLRB" or "Board") adjudicates disputes concerning those practices. 29 U.S.C. § 160(j), (l). Because the Board's adjudication may take considerable time to conclude, injunctive relief under § 10(j) "protect[s] the integrity of the collective bargaining process and . . . preserve[s] the Board's remedial power while it processes the charge." *Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 459–60 (9th Cir. 1994) (en banc), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

In this case, the Regional Director of the NLRB ("Regional Director") petitioned the district court for a preliminary injunction under § 10(j) of the Act, § 160(j), alleging that Nexstar Broadcasting failed to bargain in good faith; improperly withdrew recognition from the union representing its employees; improperly made unilateral changes to employees' conditions of employment; and improperly interfered with employees' rights to union representation. In support of the petition, the Regional Director submitted the entire administrative record developed during proceedings before the agency's Administrative Law Judge ("ALJ"). Based on a finding that the Regional Director was likely to succeed on

the merits of the complaint and applying an inference of likely irreparable harm based on our decision in *Frankl ex rel. NLRB v. HTH Corp.*, 650 F.3d 1334 (9th Cir. 2011)*,* the district court granted a preliminary injunction. After the court issued the preliminary injunction, the ALJ ruled in favor of the Regional Director, finding that Nexstar had violated § 8(a)(1) and (5) of the Act. *Nexstar Broadcasting, Inc. D/B/A KOIN-TV*, 2021 WL 2414030 (N.L.R.B. Div. of Judges June 11, 2021).

Nexstar appealed the ALJ's decision to the Board. The Board affirmed the decision and ordered relief for the union. *Nexstar Broadcast, Inc.*, 371 N.L.R.B. No. 118. The Board then moved in this court to dismiss as moot the appeal from the district court decision because the preliminary injunction had expired once the Board resolved the administrative appeal. *See Johansen ex rel. NLRB v. Queen Mary Restaurant Corp*., 522 F.2d 6, 7 (9th Cir. 1975) (per curiam). I agree with the Board that the appeal to us is now moot, and that we no longer have jurisdiction. My colleagues on this panel disagree. Invoking the "capable of repetition yet evading review" exception to mootness, they hold that the appeal is not moot.

It is established law that when the Board issues a final decision on the merits for an unfair labor practice complaint, a § 10(j) preliminary injunction proceeding

2

is moot. *See Johansen*, 522 F.2d at 7. The exception to mootness invoked by my colleagues does not apply in the appeal before us, for it is far too fact-intensive to be capable of repetition in the manner required by the exception.

If I were to reach the merits, I would affirm the district court. We held in *Frankl* that in deciding whether to grant preliminary injunctive relief under § 10(j), a district court may not presume irreparable harm upon a bare showing of likelihood of success on the merits, but that "inferences from the nature of the particular unfair labor practice at issue remain available" when determining whether there is a "present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later relief." *Frankl*, 650 F.3d at 1362. Specifically, we wrote that "a finding of likelihood of success as to a § 8(a)(5) bad-faith bargaining violation in particular, along with permissible inferences regarding the effect of that violation, can demonstrate the likelihood of irreparable injury, absent some unusual circumstance indicating that union support is not being affected or that bargaining could resume without detriment as easily later as now." *Id.* at 1363.

Here, as in *Frankl*, the district court found the Regional Director had shown a "likelihood of success on the merits," *inter alia*, based on evidence that Nexstar had violated § 8(a)(5) of the Act for failure to bargain in good faith. After

3

evaluating the entire record, the district court inferred a likelihood of irreparable harm, stating: "In the absence of any contrary evidence, I apply the inference stated in *Frankl*—an inference that grows in strength the longer the time gap between the withdrawal of recognition and the request for injunctive relief. Accordingly, I GRANT Petitioner's Petition for Preliminary Injunctive Relief."

Reaching the merits, my colleagues hold that the district court misread *Frankl*. They write that the district court erroneously treated *Frankl*'s recognition of an "available" inference of irreparable harm as a mandatory presumption in the context of a likely § 8(a)(5) violation. I disagree. It is the panel majority that has misread *Frankl*. The district court faithfully followed *Frankl* when it inferred, absent contrary evidence, that Nexstar's violation of § 8(a)(5) was likely to result in irreparable harm to the union if preliminary injunctive relief were not granted.

I respectfully dissent.

## I. Background

The majority provides an accurate but abbreviated recitation of the facts in the record. The following is a more detailed recitation.

### A. Factual Background

4

This appeal arises in the context of a protracted labor dispute between Nexstar Broadcasting ("Nexstar"), and National Association of Broadcast Employees & Technicians, the Broadcasting and Cable Television Workers Sector of the Communications Workers of America, Local 51, AFL-CIO ("NABET Local 51" or "the union"). Nexstar is headquartered in Irving, Texas. It owns and operates nearly two hundred television stations across the country. Nexstar purchased KOIN-TV, a television station in Portland, Oregon, from LIN Television Corporation in January 2017 as part of a larger acquisition. NABET Local 51 represents two bargaining units of employees at KOIN-TV.

LIN Television and the union were parties to multiple collective-bargaining agreements. The most recent agreement was in effect from July 29, 2015, to July 28, 2017, and was extended to September 8, 2017. After assuming ownership of KOIN-TV, Nexstar continued to employ most of the station's employees and continued its operations largely unchanged. Nexstar thereby took on LIN Television's obligation to bargain with the union for a new agreement. *See Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 41 (1987) ("If the new employer makes a conscious decision to maintain generally the same business and to hire a majority of its employees from the predecessor, then the bargaining obligation of § 8(a)(5) is activated.").

In response to charges of unfair labor practices filed against Nexstar by the union, the Regional Director issued an administrative complaint on June 30, 2020, later amended on September 18, 2020. A five-day hearing was held before an ALJ in November 2020. The following narrative is largely based on evidence adduced at that hearing.

Nexstar and the union met for bargaining 42 times between June 2017 and December 2019. The union's lead negotiator was its president, Carrie Biggs-Adams. Nexstar's lead negotiator was its in-house attorney, Vice President of Labor and Employment Relations, Charles Pautsch. Material terms at issue included wages and overtime, vacation and holidays, and health benefits.

During the bargaining process, both parties filed charges of unfair labor practices with the NLRB. Many of the charges against Nextstar were meritorious. The Board found that Nexstar violated § 8(a)(1) and (5) of the NLRA when it failed to provide information to the union in 2017, *Nexstar Broadcasting, Inc.*, 367 NLRB No. 117 (2019), and when it made unilateral changes to terms of employment in 2017 and 2018. *Nexstar Broadcasting, Inc.*, 369 NLRB No. 61 (2020), *enforced, NLRB v. Nexstar Broadcasting, Inc.*, 4 F.4th 801 (9th Cir. 2021). The Board also found that Nexstar violated § 8(a)(1), (3) and (5) of the NLRA when it issued a written disciplinary warning to employee and union steward Ellen

Hansen in July 2018 and again failed to provide the union with requested information relevant to bargaining. *Nexstar Broadcasting, Inc.*, 370 NLRB No. 68 (2021). Most recently, the Board held that Nexstar violated § 8(a)(1) and (5) of the NLRA when once again it failed to provide information to the union, this time related to its dues collection processing costs. *Nexstar Broadcasting, Inc.*, 370 NLRB No. 72 (2021).

At least one charge against the union was meritorious. An ALJ found that the union violated § 8(b)(3) of the Act in January 2019 when it failed to respond to Nexstar's request for information. The Regional Director of the NLRB settled several additional unfair labor practice charges against the union, which stemmed in part from a "Welcome Letter" issued to new employees in February 2019.

Negotiations between Nexstar and the union became particularly contentious in 2019. The parties disagreed strongly about whether Nexstar should deduct from employees' paychecks the union's initiation fee, which Nexstar contended was "exorbitant," and about health insurance coverage and premiums. Beginning in September 2019, Nexstar began making unilateral changes to conditions of employment by assigning bargaining unit work to non-bargaining unit employees without notice to the union.

Nexstar provided evidence suggesting that near the end of 2019 KOIN-TV managers began to doubt that the union retained majority support. Many of the new employees who had been hired since the expiration of the last collective-bargaining agreement had elected not to join the union. On December 18, 2019, KOIN-TV Vice President and General Manager Patrick Nevin received an email from a manager summarizing conversations he had with several employees about their dissatisfaction with representation by the union. Nevin and other KOIN-TV managers described conversations they had with several employees who expressed a lack of support for the union. One employee testified about his and his coworkers' desire to "get rid of" the union.

On January 8, 2020, Nexstar notified NABET Local 51 in writing that it was withdrawing recognition of the union as the collective bargaining representative of the two bargaining units. In a letter to NABET Local 51 President Biggs-Adams, Nevin asserted that Nexstar had "good-faith reasonable doubt" that the union had majority support of employees in either of the bargaining units. Nevin wrote that Nexstar had "substantial objective evidence" of the union's loss of majority support. That same day, Nevin held several meetings with employees in both bargaining units. He informed them of the withdrawal of recognition and told them that they would soon be receiving a 1.5% wage increase, but that they would

8

not receive it until after a 45-day waiting period. At these meetings, Nevin told employees that Nexstar had not conducted any formal polling to gauge union support. Instead, it based its withdrawal of recognition on "a few conversations with people."

In response to Nexstar's withdrawal of recognition, the union circulated a petition in the two bargaining units in an attempt to show continuing support for the union. During the signature drive, several employees expressed fear of retaliation by Nexstar. To address the employees' concerns and to protect their identities, the union brought in a neutral third-party to review the petition and certify the signatures. On February 18, 2020, a retired Catholic priest verified the signatures. Those signatures confirmed that the union retained majority support in both bargaining units. The priest hand-delivered the petition to Nevin.

Despite documentation of the union's support, Nexstar refused to meet with the union for bargaining. It removed the union's bulletin boards at the station. Nexstar also made unilateral changes to terms of employment, including altering the vacation-request system, providing employees with the promised 1.5% wage increase, and assigning bargaining unit work to non-unit employees.

Union representatives testified that after withdrawal of recognition, KOIN-TV management threatened bargaining unit employees who discussed union activities or conditions of employment with each other. Union steward Ellen Hansen testified that when she approached a fellow employee on a coffee break and asked about the union, KOIN-TV manager Rick Brown came up behind her and said: "I wouldn't talk about that if I were you." On another occasion, Brown told Hansen that she was "not to be handing out bulletins" about contract negotiations because the union was no longer recognized. Brown also threatened an employee who asked about a raise in a performance review, stating that employees were not supposed to be talking about their wages with each other and that all raises could be revoked entirely. In February 2021, an employee requested the presence of a union steward at a disciplinary hearing. Nexstar denied the request, citing the company's lack of recognition of the union.

Members of the union leadership team testified that they experienced a decline in members' engagement with the union after Nexstar withdrew recognition and ceased collective bargaining. Hansen declared in March 2021 that no new employees responded to her emails or had in-person conversations about the union for the past several months. Hansen stated further that in early 2021, because of fear of retaliation, an employee refused to document an alleged

10

violation of the collective bargaining agreement by Nexstar. She declared that in the past union employees would routinely contact union leadership multiple times a week. After Nexstar's withdrawal of recognition, only one employee asked a union steward to be present during a disciplinary meeting.

## B. National Labor Relations Board Proceedings

NABET Local 51 filed four unfair labor practice charges against Nexstar, alleging refusal to engage in good-faith bargaining, improper withdrawal of recognition, threats to employees, and unilateral changes to conditions of employment. The Regional Director conducted a field investigation and determined that there was reasonable cause to believe, as alleged in the charges, that Nexstar violated § 8(a)(1) and (5) of the Act. On June 30, 2020, the Regional Director filed a Consolidated Complaint against Nexstar. The Regional Director filed a Second Consolidated Complaint on September 18, alleging two additional violations.

The hearing before the ALJ took place over the course of five days between November 12–18, 2020. In June 2021, the ALJ found for the Regional Director. She found that Nexstar failed to bargain in good faith and instead engaged in "surface bargaining"; improperly withdrew recognition from the union; threatened

11

employees engaging in union activities; and made unilateral changes to conditions of employment. *Nexstar Broadcasting, Inc. D/B/A KOIN-TV*, 2021 WL 2414030 (N.L.R.B. Div. of Judges June 11, 2021). The Board issued its final disposition in the administrative case on July 27, 2022. It found that the violations occurred and ordered relief for the union. *Nexstar Broadcasting, Inc.*, 371 N.L.R.B. No. 118.

## C. District Court Proceedings

On February 2, 2021, after the administrative hearing but prior to the issuance of the ALJ's decision, the Regional Director, Ronald K. Hooks, filed a petition in the district court for injunctive relief under § 10(j) of the NLRA, 29 U.S.C. § 160(j). In support of the petition, the Regional Director submitted the entire evidentiary record of the administrative hearing before the ALJ.

The petition alleged that the Regional Director's complaint had a substantial likelihood of success before the Board and that, at the conclusion of its proceedings, the Board would likely issue a cease-and-desist order against Nexstar. The petition stated that without preliminary injunctive relief requiring Nexstar to re-recognize the union and to resume bargaining in good faith and stop coercing employees from engaging in union activities, "employee support for the Union will be forever lost and Respondent will effectively accomplish its unlawful goal of

12

permanently ridding its workplace of union supporters." Contrary to the contention of my colleagues, Maj. Op. at 23, the Regional Director's concern about loss of union support was not the "sole basis" for the claim of irreparable harm. The Regional Director also contended that the Board's remedial authority "may be frustrated" without interim injunctive relief because "employees will permanently and irrevocably lose the benefit of the Board's processes and the exercise of statutory rights for the entire period required for Board adjudication" unless Nexstar's unfair labor practices are enjoined pending the Board's decision.

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter,* 555 U.S. at 20. The district court initially ruled for the Regional Director on three of the four *Winter* requirements. It initially refrained from ruling on whether the union had shown a likelihood of irreparable harm in the absence of a preliminary injunction.

The district court expressed doubt about whether irreparable harm to the union was likely to occur if a preliminary injunction were not granted. The court focused its concern on one type of potential irreparable harm—whether the union

would lose support from its employees following Nexstar's withdrawal of recognition if injunctive relief were not granted. The court expressed concern that the Regional Director had not submitted testimony of any employee stating that she no longer supported the union because recognition had been withdrawn and bargaining had ended. During a hearing, the court stated:

> The whole question then turns into irreparable harm, and I'm going to think about that one for a few days, I think, because the record in front of me is not a record that shows factually any irreparable harm. There isn't a factual record showing that. The record is, in fact, to the contrary, and so that's troubling to me.
>
> . . .
>
> On the other hand, the Ninth Circuit has been pretty firm about this. And I need to just take another look at whether the Ninth Circuit has essentially said that if I find X, Y will follow; X being likelihood of success on a withdrawal of support case and Y being irreparable harm.

After receiving supplemental briefing, the district court inferred a likelihood of irreparable harm based on *Frankl ex rel. NLRB v. HTH Corp.*, 650 F.3d 1334 (9th Cir. 2011). The court issued a preliminary injunction on March 29, 2021.

Nexstar timely appealed and moved to stay the preliminary injunction pending appeal. A motions panel of our court denied the stay. After issuing its final decision affirming the decision of the ALJ, the Board moved in this court to dismiss as moot the appeal from the district court. It is uncontested that the

preliminary injunction at issue in the appeal had no force or effect once the Board decided the administrative appeal. Nexstar opposed the Board's motion, arguing that the "capable of repetition yet evading review" exception saves the appeal from mootness.

## II. Mootness

When the Board issues a final decision on the merits for an unfair labor practice complaint, a § 10(j) preliminary injunction is moot. *Johansen ex rel. NLRB v. Queen Mary Restaurant Corp.*, 522 F.2d 6, 7 (9th Cir. 1975) (per curiam). This mootness rule was established when our court extended *Sears, Roebuck & Co. v. Carpet Layers*, 397 U.S. 655 (1970) (per curiam), which concerned a § 10(*l*) injunction, to § 10(j) injunctions. *See also Barbour v. Cent. Cartage, Inc.,* 583 F.2d 335, 337 (7th Cir. 1978) ("[W]hile the language is not as clear as the language in Section 10(*l*), the legislative history and policies behind Section 10(j) indicate that injunctions entered pursuant to it also should last only until the Board's adjudication of the unfair labor practice charges."). My colleagues conclude that the question at issue in this appeal is not moot, arguing that it is "capable of repetition yet evading review." Maj. Op. at 16–22.

15

The "capable of repetition" exception to mootness applies in only some §

10(j) injunction appeals, such as the appeal in *Miller ex rel. NLRB v. California*

*Pacific Medical Center*, 19 F.3d 449, 453 (9th Cir. 1994) (en banc). The district

court in *Miller* had applied our decisions in *Aguayo ex rel. NLRB v. Tomco*

*Carburator Co.,*853 F.2d 853 F.2d 744 (9th Cir. 1988)*, and *Scott ex rel. NLRB v.*

*El Farra Enterprises., Inc.*, 863 F.2d 670 (9th Cir. 1988)*. The question before the

en banc panel in *Miller* was whether the rule we had previously established in

*Tomco* and *El Farra* was correct. We overruled both cases. *Miller*, 19 F.3d at 457

("We . . . overrule *Tomco* and *El Farra* on this point . . . ."). Unlike the facts in the

case before us, the facts in *Miller* (and, indeed, in *Tomco* and *El Farra*) were

irrelevant to the court's decisions. In those cases, the question at issue was a pure

question of law. The parties in *Miller* did not dispute that the "capable of

repetition" exception applied. *Id.* at 453. We agreed with the parties, writing that

the issue "involve[d] the propriety of the standard applied by district courts in §

10(j) proceedings." *Id.*

Although they misapply it, my colleagues do not contest that the rule

established in *Frankl* governs this case. This appeal is in stark contrast to *Miller*,

where the question was whether an established circuit rule should be changed.

Unlike in *Miller*, the issue in this appeal is highly fact-intensive, and neither party

has argued that *Frankl* should be altered or abandoned. Given the posture of this case and the fact-dependent application of the *Frankl* rule, the "capable of repetition" exception to mootness does not apply.

## III. Merits

Given that my colleagues have reached the merits, I feel compelled to do so in order to register my strong disagreement with their holding.

## A. Preliminary Injunctions Under Section 10(j)

Section 10(j) of the NLRA provides that, upon the Board's issuance of a complaint and a petition to the district court for a preliminary injunction, the district court "shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper." 29 U.S.C. § 160(j). When determining whether issuing a preliminary injunction under § 10(j) is "just and proper," district courts are to apply the "traditional equitable criteria" governing injunctive relief. *Miller*, 19 F.3d at 459. A party seeking a preliminary injunction under § 10(j) must satisfy the four requirements set forth in *Winter*.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Courts must evaluate petitions for both preliminary and permanent injunctive relief on "a case-by-case basis in accord with traditional

17

equitable principles and without the aid of presumptions or a 'thumb on the scale' in favor of issuing such relief." *Perfect 10, Inc. v. Google, Inc.* 653 F.3d 976, 980–81 (9th Cir. 2011) (quoting *Monsanto*, 561 U.S. at 157).  In § 10(j) cases, courts are to analyze the four traditional equitable criteria "through the prism of the underlying purpose of section 10(j), which is to protect the integrity of the collective bargaining process and to preserve the Board's remedial power." *Frankl*, 650 F.3d at 1355 (quoting *Scott ex rel. NLRB v. Stephen Dunn & Assocs.*, 241 F.3d 652, 661 (9th Cir. 2001), *abrogated on other grounds as recognized by McDermott v. Ampersand Publ'g, LLC*, 593 F.3d 950, 957 (9th Cir. 2010)).

### B.  Irreparable Harm

In the context of the NLRA, "permitting an alleged unfair labor practice to reach fruition and thereby render[] meaningless the Board's remedial authority *is* irreparable harm." *Small ex rel. NLRB v. Avanti Health Health Systems, LLC ("Avanti Health")*, 661 F.3d 1180, 1191 (9th Cir. 2011) (alterations in original omitted) (quoting *Frankl*, 650 F.3d at 1362).  To obtain § 10(j) relief, the Regional Director must establish that a court's "failure to issue an injunction 'likely' would cause irreparable harm." *Small ex rel. NLRB v. Operative Plasterers' & Cement*

18

*Masons' Int'l Ass'n Local 200 ("Operative Plasterers")*, 611 F.3d 483, 494 (9th Cir. 2010).

In *Miller*, we had held in a § 10(j) case that if the Board "demonstrates that it is likely to prevail on the merits, we presume irreparable injury." 19 F.3d at 460. The Supreme Court's decision in *Winter* required us to modify *Miller*. 555 U.S. at 375. After *Winter*, likelihood of irreparable harm must be established separately rather than presumed based solely based on a finding of a likelihood of success. *See Operative Plasterers*, 611 F.3d at 490–91; *Frankl*, 650 F.3d at 1362.

We have explained in our post-*Winter* cases that some unfair labor practices carry with them an inherent possibility of irreparable injury, particularly if the unfair practice is allowed to continue for a sustained period. We wrote in *Frankl*:

> [W]hile a district court may not presume irreparable injury with regard to likely unfair labor practices generally, irreparable injury is established if a likely unfair labor practice is shown *along with a present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later relief. In making the latter determination, inferences from the nature of the particular unfair labor practice at issue remain available.*

650 F.3d at 1362 (emphasis added). That is, if there is a "present or impending deleterious effect of [a] likely unfair labor practice that would likely not be cured by later relief," that effect, in addition to the likely unfair labor practice, constitutes

19

a likelihood of irreparable harm. *Id.* In determining whether there is such an effect, a court may draw an inference based on the nature of the unfair labor practice. In other words, *Frankl* instructs that in certain cases petitioners are not required to provide independent factual support of "a present or impending deleterious" irreparable harm. For example, in § 8(a)(5) cases, courts are permitted to draw an "inference" that such harm is present or impending if there is a finding of a likely unfair labor practice violation and there is no evidence counseling against the inference. *Id.*

In *Frankl*, we gave as an example the unfair labor practice of failing to bargain in good faith. We wrote that such failure "has long been understood as likely causing an irreparable injury to union representation." *Id.* We continued: "[E]ven if the Board subsequently orders a bargaining remedy, the union is likely weakened in the interim, and it will be difficult to recreate the original status quo with the same relative position of the bargaining parties. That difficulty will increase as time goes on." *Id.* at 1363. Furthermore, because "the Board generally does not order retroactive relief, such as back pay or damages," we explained that the failure to bargain in good faith may result in "loss of economic benefits" to employees that is unlikely to be fully remediated by an order by the Board. *Id.* We concluded:

20

Thus, a finding of likelihood of success as to a § 8(a)(5) bad-faith bargaining violation in particular, along with permissible inferences regarding the likely effects of that violation, can demonstrate the likelihood of irreparable injury, absent some unusual circumstances indicating that union support is not being affected or that bargaining could resume without detriment as easily later as now.

*Id.*

In *Avanti Health*, we extended the reasoning in *Frankl* to situations where the employer failed to bargain at all. 661 F.3d at 1193. We stated, "Given the central importance of collective bargaining to the cause of industrial peace, when the Director establishes a likelihood of success on a failure to bargain in good faith claim, that failure to bargain will likely cause a myriad of irreparable harms." *Id.* at 1191. We further described four different types of irreparable harm that were likely to follow an employer's refusal to recognize a union and to bargain in good faith: (1) loss of economic benefits during the period without a collective bargaining agreement; (2) loss of non-economic union benefits such as representation in grievance and arbitration procedures; (3) threats to industrial peace; and (4) weakened employee support for the union. *Id.* at 1191–92.

## C. The District Court's Decision

In the case before us, the district court asked for supplemental briefing on the likelihood of irreparable harm. After receiving that briefing, the court inferred

21

(to use the words of *Frankl*) that there was a "present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later relief." 650 F.3d at 1362. The court wrote:

> I was concerned about Petitioner's showing of irreparable harm because the evidence submitted by Petitioner shows there was majority support for the union immediately following Respondent's withdrawal of recognition. But under *Frankl v. HTH Corp.*, in § 8(a)(5) cases when there is a likelihood of success on the merits there is an inference of irreparable harm to union representation from the continuation of the unfair labor practice. 650 F.3d 1334, 1362–63 ([9th Cir.] 2011). None of the evidence, including that in the supplemental record, shows what support for the union is like now after more time has passed since the withdrawal of recognition. In the absence of any contrary evidence, I apply the inference stated in *Frankl*—an inference that grows in strength the longer the time gap between the withdrawal of recognition and the request for injunctive relief.

Nexstar argues in its brief to us that the district court read *Frankl* to require an inference of irreparable harm as a "rigid categorical presumption." Nexstar argues that the court misinterpreted *Frankl* "as creating a mandatory structural inference of irreparable harm based solely on the type of unfair labor practice alleged." My colleagues adopt Nexstar's view, holding that the district court impermissibly "shifted the burden to Nexstar" of proving that employee support for the union remained at its pre-withdrawal-of-recognition levels. The district court did no such thing.

22

We wrote in *Frankl* that there are certain types of unfair labor practices that carry with them the likelihood of irreparable harm, particularly if a practice continues over a substantial period. *Frankl*, 650 F.3d at 1362–63; *see also Avanti Health*, 661 F.3d at 1193. But we did not write that there is a required inference of irreparable harm based solely on the type of unfair labor practice at issue. To use the word we used in *Frankl*, the inference is merely "available." *Frankl*, 650 F.3d at 1362. It is not mandatory. Nexstar itself argued as much to the district court, stating that "the Ninth Circuit cases" *do not* create "some kind of irrebuttable presumption that in a withdrawal of recognition case, that there will inevitably be loss of support."

The district court did not apply the inference as a "rigid categorical presumption." Rather, as instructed by *Frankl*, it looked to see if there is evidence in the record to suggest that the inference should not be drawn. Given the court's undisputed finding that the Regional Director was likely to succeed on the merits, and "the absence of any contrary evidence" that irreparable harm would likely result, the court applied the available inference under *Frankl*. The district court's reference to the "absence of any contrary evidence" is critical, refuting Nexstar's argument that the court applied a rigid categorical assumption. The court indicated

that if there had been contrary evidence it would have taken that evidence into account in determining whether to draw the inference.

My colleagues contend that they can discern that the court applied a rule of presumption rather than a permissive inference because the district court did not indicate what evidence it found persuasive, or how it inferred irreparable harm based on the plaintiff's predicate facts. But *Frankl* and *Avanti Health* both make clear that independent factual support of likely irreparable harm is *not* required when the court finds evidence of certain unfair labor practices, including failure to bargain in good faith. *Frankl*, 650 F.3d at 1363 (explaining that "[t]he *same evidence* and legal conclusions" used by the Director to establish a likelihood of success on the merits, "along with permissible inferences regarding the likely interim and long-term impact of the unfair labor practices" may establish a likelihood of irreparable harm (emphasis added)). The inference of likely irreparable harm is based instead on the nature of the underlying labor violation. *Id.* at 1362–63; *Avanti Health*, 661 F.3d at 1191–94.

Such inferences are permissible when the court considers the entire record and finds an absence of contrary evidence that would suggest an unusual circumstance is present. As we stated in *Avanti Health*: "In sum, a failure to

24

bargain at all is likely to cause irreparable harm 'absent some unusual circumstances indicating that union support is not being affected or that bargaining could resume without detriment as easily later as now.'" 661 F.3d at 1194 (quoting *Frankl*, 650 F.3d at 1363). This language is almost exactly that used by the district court in its order granting injunctive relief in this case.

## Conclusion

The district court carefully considered the record and correctly applied the available inference. It is apparent that my colleagues prefer that an inference of irreparable harm not be available in § 10(j) cases, even though *Frankl* specifically allows such an inference. My colleagues misapply the "capable of repetition yet evading review" exception to reach the merits of this moot appeal. Once reaching the merits, they effectively overrule *Frankl*. However, absent an en banc overruling of *Frankl*, we are bound by it.

I respectfully dissent.